OKLAHOMA WILDLIFE FEDERATION, INC., a corporation, and George H. Hulsey, an individual, Petitioners,

v.

Lt. Governor George NIGH, Chairman, Oklahoma Industrial Development and Park Commission, et al., Respondents.

No. 45047.

Supreme Court of Oklahoma.

Nov. 14, 1972.

As Corrected July 23, 1973.

Rehearing Denied July 24, 1973.

Tom A. Lucas, Norman, for petitioners.

Clyde J. Watts, Oklahoma City, for respondents, Oklahoma Wildlife Conservation Commission and Oklahoma Department of Wildlife Conservation.

Carl Hughes, Oklahoma City, Gene Stipe, and Stipe, Gossett, Stipe & Harper, McAlester, and Oklahoma City, for respondents, Oklahoma Industrial Development and Park Commission and Oklahoma Industrial Development and Park Department.

Larry Derryberry, Atty. Gen., Marvin C. Emerson, First Asst. Atty. Gen., Robert H. Mitchell, Asst. Atty. Gen., and Stuart Russell and Thomas W. Woody, Oklahoma City, amici curiae.

WILLIAMS, Justice.

This is an original proceeding brought by petitioners, Oklahoma Wildlife Federation, Inc., and George H. Hulsey for a writ of prohibition against respondents to prevent them from implementing the transfer provisions of Senate Bill 207 of the 1971 Legislature, upon the ground that such provisions are unconstitutional because they violate Art. 26 § 4, Oklahoma Constitution. Because of the nature, diversity and magnitude of the interests involved herein and their concern to our people, this Court has assumed original jurisdiction of this proceeding.

Respondents are the chairmen of the Oklahoma Wildlife Conservation Commission and the Oklahoma Industrial Development and Park Commission, respectively, and the directors of the corresponding departments of state government.

Since the filing of this proceeding, the Oklahoma Industrial Development and Park Commission and the Oklahoma Industrial Development and Park Department have been abolished and their respective functions divided by statute between two new commissions, the Oklahoma Tourism and Recreation Commission and the Oklahoma Industrial Development Commission, and corresponding new state departments; and the Tourism and Recreation Commission and Department, respectively, are made the "successors" to the Industrial Development and Park Commission and Department as relates to parks. See Senate Bill No. 499, Session Laws of 1972, Ch. 153, page 205; and Senate Bill No. 478, Session Laws of 1972, Ch. 152, page 198. For convenience in this opinion we shall continue to use the former designations.

Senate Bill 207 (Session Laws of 1971, Ch. 317, page 803) consisting of two sections, provides in Section 1 as follows:

"The land described herein and all mineral rights thereto held by the State of Oklahoma and under the control of the Oklahoma Wildlife Conservation Commission is hereby transferred to the Oklahoma Industrial Development and Park . Commission for the purposes of possession, control and all other rights of the Oklahoma Wildlife Conservation Commission to such property. * * *"

The balance of Section 1 of Senate Bill 207 consists of legal descriptions of about 8360 acres of land in the Robbers Cave State Park area and about 1280 acres of land in the Bolen Hollow area near Hartshorne; all of the land described is in either Pittsburg County or Latimer County.

Section 2 of Senate Bill 207 is a severability clause.

Article 26, Oklahoma Constitution, consisting of 4 sections, was adopted by the people of Oklahoma on July 3, 1956. In Section 1 a Department of Wildlife Conservation of the State of Oklahoma and an Oklahoma Wildlife Conservation Commission were created; this section also provided for the appointment of the members of that Commission. Section 2 provided that "Nothing in this Act shall repeal any existing laws now on the Statute, pertaining to game and fish" and gave the Commission power to acquire by purchase, gift, grants-in-aid from the Federal Government or otherwise all property "necessary, useful or convenient for its use in carrying out the objects and purposes of this Article." Section 3 provided for a Director of Wildlife Conservation to be appointed by the Commission to be the head of the new state department, and for the appointment of other assistants and employees.

We note at this point that nowhere in Article 26 are "the objects and purposes of this Article" directly stated, and that there is no direct requirement in the Article that the new commission and department should become the "successor in interest" of the then-existing State Game and Fish Commission and State Game and Fish Department, as regards duties, responsibilities and control of real property.

The objects and purposes of Article 26, and the intention that the new commission and department should assume the powers, duties and responsibilities, and control and operate the properties, of the existing commission and department, must be found, if at all, by implication in the rather involved sentence comprising Section 4 of Article 26. For clarity and convenient reference hereinafter, we divide that section according to its grammatical structure, with identifying numbers arbitrarily added:

"The fees, monies, or funds arising

(1) from the operation and transactions of said Commission

(2) and from the application and the administration of the laws and regulations pertaining to the bird, fish, game and wildlife resources of the State

(3) and from the sale of property used for said purposes

shall be expended and used by said Commission

(4) for the control, management, restoration, conservation and regulation of the bird, fish, game and wildlife resources of the State, including the purchase or other acquisition of property for said purposes,

(5) and for the administration of the laws pertaining thereto

and for no other purpose."

This section provides that "fees, moneys or funds" arising from three sources (1, 2 and 3) shall be used *"by said Commission"* for two purposes (4 and 5) *and for no other purpose.*

■ Considering the broad and comprehensive language of Section 4 as a whole, and particularly in view of the language in (2) and (4) above, we think that Section 4 clearly, if indirectly, evidences a purpose of the people of Oklahoma to transfer the powers, duties and responsibilities of the then-existing statutory commission and department to the new constitutional commission and department created by Article 26, which should thereafter control and the general administration of the fish and game laws of this state, or any new laws pertaining thereto enacted by our Legislature.

In this connection, we note that the language of (4) above (a restricted purpose) may fairly be characterized as a re-statement, in slightly more detailed form, of substantially the same matter contained in (2) above (a source of the funds whose use is thereafter restricted). Thus, Section 4 of Article 26 requires that the "fees, moneys or funds" arising from the general administration of the fish and game laws

(2) should thereafter be used *"by said Commission"* for the same general purposes (4). Of course this could not be done if the theretofore-existing commission and department continued to exercise their statutory functions.

For substantially the same reasons, we find no intention in Section 4 to limit the restrictions upon uses contained in (4) and (5) to "fees, moneys or funds" acquired by the Commission after its creation in 1956. The power of the people, by constitutional amendment, to limit the uses of (their) existing state funds or property is unquestioned.

Our Legislature apparently construed Article 26 in the same general way, because in 1957 it enacted Senate Bill No. 4 (Session Laws of 1957, Ch. 8, page 209), "An Act relating to Wildlife Conservation; vitalizing Article XXVI of the Oklahoma Constitution * * *". This Act, and other amendments of existing statutes pertaining to fish and game, may fairly be described as making the new commission and department the constitutional "successors" in all respects of the theretofore-existing statutory commission and department. See 29 O.S.1971, Sections 102 et seq.

This Court appointed Hon. J. Knox Byrum, a retired former Judge of the District Court of this State, as its Special Referee for the purpose of conducting hearings in this proceeding. His report and recommendations are now before us.

The evidence presented at the hearing conducted by the Special Referee appointed by this Court (three exhibits) was all introduced by stipulation of the parties and was documentary in nature. Exhibit 1 was prepared by the Attorney General and shows in tabular form a summary of the information contained in the deeds by which the State of Oklahoma acquired title to the lands described in Senate Bill 207; the numerous deeds summarized bear dates between 1926 and 1958. Exhibit 2 amounts to a stipulation in writing that in only five of the years since 1925 did our Legislature make appropriations to the Department of Wildlife Conservation and its statutory predecessors. In four instances the appropriation was for predatory animal control; in the fifth instance, the appropriation was for use in "carrying out the purposes of Article 20, Chapter 24, Oklahoma Statutes, 1931". There was no appropriation made specifically for the purchase of land. Exhibit 3 consists of certified copies of the deeds summarized in Exhibit 1, with the stipulation that in case of conflict, Exhibit 3 would control. Although in the stipulation counsel for the respondent Industrial Development and Park Commission reserved the right to question the accuracy of Exhibit 2, he has not done so. We find no conflict in the evidence before us.

From the evidence we conclude as did our special Referee that the lands described in Senate Bill 207 were acquired by gift or purchased with "fees, moneys or funds" arising from "the administration of the laws and regulations pertaining to the bird, fish, game and wildlife resources of the State" and not with appropriated funds. In this connection we note that all of the deeds in Exhibit 3 recite at least a nominal, and in most cases a substantial, cash consideration.

The respondent state commissions and departments entertained opposing views as to the constitutionality of Senate Bill 207. The Oklahoma Wildlife Conservation Commission and Department made common cause with the petitioners in opposing Senate Bill 207 and filed a joint brief with them.

█ In the brief, petitioners argue under several propositions that for various reasons Senate Bill 207 is unconstitutional. We consider the first proposition to be dispositive of this matter.

It is to the general effect that because of Article 26, Section 4, Oklahoma Constitution, our Legislature is without power to transfer the possession, operation and management of the lands described in Senate Bill 207 from the Oklahoma Wildlife Conservation Commission and Department to the Oklahoma Industrial Development and

Parks Commission and Department. The line of reasoning may be summarized as follows: (1) the lands were acquired with the "fees, moneys or funds" described in Article 26, Section 4, Oklahoma Constitution, and not with appropriated funds; (2) therefore the restrictions as to use set out in that section are applicable to such lands, which must be used "by said Commission" for the restricted purposes indicated "and for no other purpose."

We agree with that line of reasoning. If the lands were not subject to the same restrictions as the "fees, moneys or funds" with which they were acquired, the obvious purposes of Article 26 could be defeated by the simple device of converting the funds into lands and then devoting the lands to uses not contemplated by Article 26, by agencies of state government other than "said Commission".

In the answer brief of respondent Oklahoma Industrial Development and Parks Commission, it is argued under several propositions that for reasons indicated, Senate Bill 207 is not in violation of our Constitution. Most of these arguments are in answer to specific propositions argued in the briefs of petitioners and which we have found it unnecessary to consider in this opinion because, as our Special Referee has found and concluded and we have determined, the petitioners' first proposition is decisive of this matter.

It is also argued that petitioners are not the "real parties in interest" within the meaning of 12 O.S.1971 § 221. As has been stated herein, the Wildlife Commission and Department made common cause with petitioners in arguing the unconstitutionality of Senate Bill 207. Under the facts and circumstances of this case, we hold that petitioners, joined by Wildlife as they were, are proper parties to assert invalidity of the statute. Further, due to the operation of the principle of res judicata, both parties defendant Commissions and Departments are bound by the terms of this decision. No question is here presented that there is an attempt by the State in effect to sue itself.

Moreover, "A defendant's right is to have a cause of action prosecuted against him by the real party in interest, but his concern ends when a judgment for or against the nominal plaintiff would protect him from any action upon the same demand by another, and when, as against the nominal plaintiff, he may assert all defenses and counterclaims available to him, were the claim prosecuted by the real owner." McCoy v. Moore, 185 Okl. 253, 91 P.2d 87, 88; Moore v. Cason Bros., 202 Okl. 252, 212 P.2d 460. We think it is obvious that the opinion and judgment of this Court in this proceeding will as well serve the same purpose, and afford respondents the same protection as would be served and afforded to defendants in ordinary civil actions by observance there of the requirements of the "real party in interest" statute.

There is some discussion in the briefs and the report of the referee as to alleged restrictions upon the uses of the lands described in Senate Bill 207, contained in the conveyances by which the State of Oklahoma acquired title thereto. The grantors in those conveyances, their heirs, and any remaindermen who might claim an interest in the real estate are not parties to this original proceeding and are not before this Court at this time. Also, from the record before us we cannot say that the uses to which the land has been, and will be, put by the Oklahoma Wildlife Conservation Commission and Department constitute violations of these alleged restrictions. We therefore decline to consider them.

We hold that Senate Bill 207, Session Laws of 1971, Ch. 317, page 803, violates the provisions of Article 26, Section 4, Oklahoma Constitution, and is unconstitutional and void.

During the pendency of this proceeding, the respondents by stipulation sought and obtained an order of this Court authorizing the sale of certain mineral leases upon a portion of the lands concerned, with the

funds received from the sale to be held by the State Treasurer in a special account pending the outcome of this proceeding. Those funds, if and when received, should be transferred to the Oklahoma Wildlife Conservation Commission or Department, as is appropriate, for any uses provided by law.

The writ of prohibition is granted, and respondents are hereby prohibited from implementing the provisions of Senate Bill 207.

BERRY, C. J., DAVISON, V. C. J., and JACKSON, IRWIN, LAVENDER, BARNES and SIMMS, JJ., concur.

HODGES, J., dissents.