Dear Director ALan,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
1. Do the provisions of Article XXVI, Section 2 of theOklahoma Constitution empower the Oklahoma Wildlife ConservationCommission to acquire land through exchange or trade, when theCommission finds such acquisition necessary, useful or convenientto its carrying out the objects and purposes of Article XXVI?
 2. If the Oklahoma Wildlife Conservation Commission isempowered to acquire real property through trade or exchange,must it follow any or all of the procedures for disposing of realproperty established for state agencies at 74 O.S. 129.4 (1988)?
 I.
¶ 1 In 1956, the people of Oklahoma adopted Article XXVI of the Oklahoma Constitution. That Article, which consists of four sections, created the Department of Wildlife Conservation and the Oklahoma Wildlife Conservation Commission, in Article XXVI, Section 1. Article XXVI, Section 1 provides that the Department of Wildlife Conservation shall be governed by the Wildlife Conservation Director, under rules, regulations and policies prescribed by the Oklahoma Wildlife Conservation Commission.
¶ 2 In empowering the Commission to acquire property, Article XXVI, Section 2 provides as follows:
 Nothing in the Act shall repeal any existing laws now on the Statute (sic), pertaining to game and fish.
 The Commission may acquire by purchase, gift, grants-in-aid from the Federal Government, or otherwise, all property necessary, useful or convenient for its use in carrying out the objects and purposes of this article.
(Emphasis added).
¶ 3 At Article XXVI, Section 4, the Constitution provides that the fees, monies or funds arising from the application and the administration of wildlife laws and from the resources of the Wildlife Conservation Commission shall be used by the Commission for the control, management, restoration, conservation and regulation of the bird, fish, game and wildlife resources of the State, and may not be used for any other purpose. That section provides:
 The fees, monies, or funds arising from the operation and transactions of said Commission and from the application and administration of the laws and regulations pertaining to the bird, fish, game and wildlife resources of the State and from the sale of property used for said purposes shall be expended and used by said Commission for the control, management, restoration, conservation and regulation of the bird, fish, game and wildlife resources of the State, including the purchase or other acquisition of property for said purposes, and for the administration of the laws pertaining thereto and for no other purpose.
(Emphasis added).
¶ 4 Not once, but twice Article XXVI of the Constitution recognizes that the Commission is empowered to acquire real property, and that real property may be acquired through various means. Article XXVI, Section 4 recognizes that property may be obtained by "purchase or other acquisition." Article XXVI, Section 2 recognizes that all means of acquisition are at the Commission's disposal, that section providing that property may be acquired by "purchase, gift, grants-in-aid from the Federal Government, or otherwise." Because the Constitution uses such open ended language to empower the Commission to acquire property, we conclude that it was the intent of the drafters that the Commission could acquire property through any means not prohibited by the Constitution, including acquisition by trade or exchange. Accordingly we conclude that the Oklahoma Wildlife Conservation Commission is empowered to acquire real property by trade or exchange.
 II.
¶ 5 Your second question is whether the Commission, in acquiring real property through trade or exchange, must comply with any or all of the provisions of 74 O.S. 129.4 (1988). That section establishes the general procedures to be followed by a state agency when selling, exchanging or otherwise disposing of real property.
¶ 6 The pertinent provisions of 74 O.S. 129.4 (1988) require:
 A. Unless procedures for the disposal of real property owned by this state are otherwise provided for by law, no department, board, commission, institution, or agency of this state shall sell, exchange, or otherwise dispose of such real property subject to its jurisdiction except as provided for in subsection B of this section.
 B. 1. Every department, board, commission, institution, or agency, upon legislative authorization to dispose of a parcel of real property or upon a determination, in writing, by said department, board, commission, institution, or agency that a parcel of real property subject to its jurisdiction is no longer needed by said department, board, commission, institution, or agency, shall request the Office of Public Affairs to dispose of said real property.
 2. Upon notification by the department, board, commission, institution, or agency to sell a parcel of real property, the Office of Public Affairs shall:
 a. obtain three new and complete appraisals of such property. The appraisals shall be made by three disinterested persons, knowledgeable in real estate costs, who shall ascertain:
(1) the present fair value of the property, and
 (2) the present value of the improvements on such property, and
 (3) the actual condition of the improvements on the property;
 b. cause notice of such sale to be published for at least one (1) day in a newspaper of general statewide circulation authorized to publish legal notices, and for at least three (3) consecutive weeks in a newspaper of general circulation published in the county or counties in which the property is located. The notice shall contain the legal description of each parcel of real property to be offered for sale, the appraised value thereof, the time and location of the sale or opening of the bids, and terms of the sale including the fact that no parcel of property shall be sold for less than ninety percent (90%) of the appraised value of the real property; and
 c. offer said property through public auction or sealed bids within three (3) weeks after the last publication of the notice in said newspapers. The property shall be sold to the highest bidder. The Office of Public Affairs shall not accept a bid of less than ninety percent (90%) of the appraised fair value of the property and the improvements on such property. The Office of Public Affairs is authorized to reject all bids.
 3. The cost of the appraisements required by the provisions of this section, together with other necessary expenses incurred pursuant to this section, shall be paid by the department, board, commission, institution, or agency for which the real property is to be sold from funds available to said department, board, commission, institution, or agency for such expenditure. All monies received from the sale or disposal of said property, except those monies necessary to pay the expenses incurred pursuant to this section, shall be deposited in the General Revenue Fund.
(Emphasis added).
¶ 7 In analyzing the provisions of 74 O.S. 129.4 (1988), we first note that subsection A makes it clear that the statute is meant to apply when a state department, board, commission, institution or agency wishes to "sell, exchange or otherwise dispose" of real property within its jurisdiction. That subsection further provides that sale or exchange or other disposal of property shall be done in accordance with the provisions of subsection B of the section.
¶ 8 Subsection B requires that when such disposal is to be accomplished, the department, board, commission, institution or agency "shall re quest the Office of Public Affairs to dispose of the real property."
¶ 9 Numbered paragraph two of subsection B, 74 O.S. 129.4 (1988), requires an elaborate procedure be followed when the Office of Public Affairs is notified to sell real property. The procedures to be followed include appraisals by three disinterested persons, public notice of sale, sale through public auction and sealed bids. Numbered paragraph three of subsection B provides that all money received from disposal of such property, except those monies necessary to pay the expenses incurred, shall be deposited in the General Revenue Fund.
¶ 10 The statute specifically spells out the procedures to be used when properties are to be sold, but it is silent as to what procedures are to be used when property is to be exchanged. In construing an enactment of the Legislature, the fundamental rule of construction is to ascertain and give effect to the intent of the Legislature. See e.g., Oklahoma City News BroadcastersAss'n, Inc. v. Nigh, 683 P.2d 72, 75 (Okla. 1984) and De Hasquev. Atchison, T. S.F. Ry. Co., 173 P. 73, 75 (Okla. 1918). Additionally, a statute is to be given a sensible construction, bearing in mind the evils intended to be avoided. See e.g., AMFTubescope Co. v. Hatchel, 547 P.2d 374, 379 (Okla. 1976);Carlile v. National Oil Development Co., 201 P. 377, 391
(Okla. 1921).
¶ 11 Viewed in light of these aids of construction, it becomes apparent that the general purpose of 74 O.S. 129.4 (1988) is to protect the state's interest in disposing of property, by ensuring the state receives adequate and fair compensation. In instances in which a state agency or other entity wishes to exchange one parcel of real property for another parcel, the provisions requiring public auction or sealed bids would of course not apply, as only one person or entity would own the parcel to be conveyed to the state.
¶ 12 The other segment of the section, appraisal and acceptance of no less than 90% of appraised value, will afford protection, even when disposal of land is by sale or exchange. Accordingly we conclude it was the intent of the Legislature that the requirements should be met. Thus, when an agency seeks to dispose of land by exchange or trade, both the parcel being disposed of and the parcel being conveyed to the state must be appraised in accordance with the provisions of subsection (2)(a) of 74 O.S. 129.4 (1988). Additionally, the state shall not accept land worth less than 90% of the appraised fair value of the property and improvements being disposed of by the State.
¶ 13 In accordance with the statutes, if a trade is to include the payment of money to the state, all monies received, except those monies necessary to pay the expenses incurred under the section, shall be deposited in the General Revenue Fund. This last requirement, however, does not apply to the proceeds, whether cash or land, received by the Oklahoma Wildlife Conservation Commission, unless the land being disposed of was acquired with appropriated funds. This is so because of the provisions of Article XXVI, Section 4 of the Oklahoma Constitution, which, as noted above, require that fees, monies, or funds arising from the operation and transactions of the Commission shall be used by the Commission for the purposes set forth in the Constitution, and for no other purpose. In OklahomaWildlife Federation, Inc. v. Nigh, 513 P.2d 310 (Okla. 1973), the Oklahoma Supreme Court was called upon to determine the validity of a statute which required the Wildlife Conservation Commission to convey Commission Land to the State Industrial Development and Park Commission. Relying on the provisions of Article XXVI, Section 4 of the Oklahoma Constitution, the Court held that such legislative requirement was unconstitutional. So ruling, the Court reasoned that if lands under the Commission's jurisdiction, acquired from non-appropriated funds, were not subject to the same restrictions as "fees, monies, or funds" with which the land was acquired, the obvious purpose of Article XXVI could be defeated by the simple device of converting the funds into land and then devoting the lands to uses not contemplated by the Article.
¶ 14 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. The Oklahoma Wildlife Conservation Commission is by virtueof the provisions of Article XXVI, Section 1 and Article XXVI,Section 4 of the Oklahoma Constitution empowered to acquire landby various means, including the trading or exchanging of parcelsof land.
 2. In trading or exchanging parcels of land, the OklahomaWildlife Conservation Commission must comply with 74 O.S. 129.4(1988), by:
 a. requesting the office of Public Affairs to act as its agentin accomplishing the trade or exchange;
 b. ensuring that both the land being disposed of and the landbeing received are appraised as provided, and
 c. ensuring that it receives parcels of land equal to no lessthan ninety percent (90%) of the appraised value of the realproperty being disposed of by the Commission.
ROBERT H. HENRY Attorney General of Oklahoma
NEAL LEADER Assistant Attorney General Chief, Civil Division