Henry T. **WITTENBERG,** Warner B. **Marlar,** Jack D. **Marlar,** and Sam **Bookman,** Appellants,

v.

**FIDELITY BANK, N.A.,** a national banking association, Appellee.

No. 70226.

Supreme Court of Oklahoma.

Dec. 22, 1992.

---

Rodney A. Edwards, Jones, Givens, Gotcher, Bogan & Hilborne, P.C., Tulsa, for appellants.

Robert L. Roark, C. Wesley Vines, McKinney, Stringer & Webster, P.C., Oklahoma City, for appellee.

ALMA WILSON, Justice:

The appellee was granted summary judgment in an action filed by the appellants for economic duress, breach of contract and detrimental reliance. The Journal Entry of Judgment found that no substantial controversy existed regarding any material fact and based its judgment on "the reasons set forth in [appellee's] brief." The Court of Appeals affirmed the dismissal of the first cause of action as to Plaintiff Bookman and the second and third causes of action. But the court reversed and remanded the first cause of action. This Court grants certiorari for the limited purpose of addressing the issues remanded to the trial court.

Where there is no dispute as to any material fact, and where all inferences in the evidence are taken in favor of the party opposing the motion, summary judgment is proper. *Hargrave v. Canadian Valley Elec. Co-op.*, 792 P.2d 50, 55 (Okla.1990). If under the evidence, reasonable persons would reach different conclusions, summary judgment is improper. *Hargrave*, 792 P.2d at 55. Accordingly, the facts recited below are those to which there is no dispute according to the respective statements of material fact in the summary judgment exhibits and the facts as recited by the parties in their appellate briefs.

On October 10, 1978, the appellants and other members of a joint control venture group borrowed $943,758.00 from the appellee and delivered a promissory note to the appellee secured by the majority stock in the Bank of Inola. The group borrowed an additional amount of $363,308.00, which was secured by other collateral. In April, 1979, the group purchased the stock of the Bank of Commerce Choteau. As a part of the loan transaction to buy the two banks, both banks established a correspondent banking relationship with the appellee. The appellants became directors of the Bank of Inola and Bank of Commerce Choteau.

On December 10, 1980, the appellee purchased non-recourse loan participations from the Bank of Commerce Choteau. On June 28, 1982, the appellee offset deposit accounts of Bank of Inola in the amount of $60,221.35 and Bank of Commerce Choteau in the amount of $79,953.47. The bank stated in a letter that the amounts were being charged back because of past due participation loans on parties that were customers of the Bank of Inola and the Bank of Commerce Choteau. That same day the appellee called all of the notes due from the stockholders and the appellants to be paid on or before August 1, 1982. When the appellants, Henry Wittenberg, Warner Marlar and Jack Marlar contacted the appellee on July 9, 1982, to discuss

renewal and extension of the promissory notes they were told that they must first purchase the appellee's position in the non-recourse participations that had been non-performing and had been offset. This proposal was put in a document prepared by appellee's counsel and received by the appellants on July 12, 1982. The appellants rejected the proposal.

On Thursday, October 14, 1982, the appellants were informed that the Federal Deposit Insurance Company and the Oklahoma Banking Commission would require a $500,000.00 capital injection in the Bank of Inola and an $800,000.00 capital injection in the Bank of Commerce Choteau. These amounts had to be paid into the respective banks before 12:00 noon on Sunday, October 17, 1982, or the banks would be closed. The appellants and the appellee negotiated for loans to cover the capital injections and finally agreed that the appellants would pledge collateral totalling approximately $2,160,000.00 beyond the value of the stock to secure the loans. On October 18, 1982, the appellee delivered loan agreements to the appellants at the closing containing a release, indemnity and defense agreement to indemnify the appellee for the offset against the banking accounts of Bank of Inola and Bank of Commerce Choteau. At the insistence of the appellants, the clause indemnifying the appellee for the offset was deleted from the loan agreements. But the appellee threatened to call the appellants' notes if at any time the Bank of Inola or the Bank of Commerce Choteau brought any action regarding the offset funds. The agreement required the appellants to exercise their best efforts to sell the respective banks and advised that the banks would be placed under conservatorship at 10:00 a.m. on October 18, 1982, unless the Oklahoma Banking Commissioner was notified of the capital infusion required.

The appellants allege that a material condition of their decision to execute the loans for the capital injections of the respective banks was an agreement between the parties that the appellee would sell to the appellants a promissory note and transfer the mortgage secured by the homestead of a joint venturer, Don Garner. Garner had not paid his part of a note of the joint venturers, and the appellants wanted to buy his note and mortgage with the appellee in order to force Garner to contribute his share. On May 26, 1983, the Bank of Commerce Choteau was sold at twice its book value. On November 1, 1983, the appellants paid their indebtedness to the appellee in full, after the sale of the Bank of Inola. They were informed that the appellee had settled and released the collateral to Don Garner on October 31, 1983.

Regarding the first claim based on economic duress, the appellants allege that they were entitled as directors of the Bank of Commerce Choteau to take legal action to recover funds that the appellee bank unlawfully offset from an account the Bank of Commerce Choteau had with the appellee bank. The appellants allege that the appellee pressured the appellants as personal borrowers from the appellee to keep the appellants from acting in their official capacity as bank directors and taking legal action against the appellee bank to recover the offset funds. As damages the appellants claim that when they sold the Bank of Commerce Choteau stock for twice the book value, they lost $148,468.00 as a result of the actions of the appellee.

The appellee bank in its motion for summary judgment answered that even if its set-off against the bank account of Bank of Commerce Choteau was wrongful, the set-off created a claim in favor of the Choteau bank and not its shareholders. The conclusion of the appellee was that the appellants were not real parties in interest. The trial court agreed with this argument in granting summary judgment. The Court of Appeals reversed holding that the appellee had interjected the corporate dispute concerning the offset into the personal debtor/creditor relationship between it and the appellants so as to establish the elements of economic duress against the appellants who were the real parties in interest.

■ This state recognizes the principle of economic duress/business compulsion. The elements are listed in *Centric Corp. v.*

*Morrison–Knudsen Co.*, 731 P.2d 411, 417 (Okla.1986).[1] However, we agree with the judgment of the trial court that economic duress is inapplicable to the facts of this case because the appellants are not the real parties in interest. We do not decide whether the Bank of Inola and the Bank of Commerce Choteau have a claim based on economic duress.

Every action must be prosecuted by the real party in interest. *Great Western Motor Lines, Inc. v. Cozard,* 417 P.2d 575, 578 (Okla.1966).[2] "The real party in interest is the party legally entitled to the proceeds of a claim in litigation." *Aetna Casualty & Sur. Co. v. Associates Transports, Inc.,* 512 P.2d 137, 140 (Okla.1973). The facts reveal that any wrong done was one suffered by the Bank of Inola and the Bank of Commerce Choteau. More specifically, the $79,953.47 offset was from the funds of Bank of Commerce Choteau. The appellants alleged a loss of twice that amount due to the sale of the stock of the Bank of Commerce Choteau. Nevertheless, any loss to the appellants was the result of the loss to the bank. "Generally, stockholders cannot maintain or defend an action to redress wrongs done to a corporation as a corporation is a legal entity, separate and distinct from its stockholders." *Barnett v. Bodley,* 348 P.2d 502, 505 (Okla.1959). The appellants have the further disability of being former stockholders and yet claim that they are entitled to damages for a loss in the value of their stock because of a wrongful act against a corporation in which they were stockholders.

The Court of Appeals in a similar case, but where the prosecuting party was still a stockholder, observed:

> The privilege of doing business in corporate form is granted by statute. This privilege carries many benefits including the limits on personal liability to the stockholders investment. One cannot simultaneously claim the benefits of corporate form and escape the liabilities of that insulation. No claim is made that the legal title to the alleged debt is not in the corporation or that the corporation is non-existent. As such it cannot be ignored. The real party in interest rule is designed to protect the defendant by insuring that the party with the legal right to sue brings the action. *Oklahoma Wildlife Federation, Inc. v. Nigh,* 513 P.2d 310 (Okl.1972).

*Mainord v. Sharp,* 569 P.2d 546, 548 (Okla.App.1977). The appellants cannot under these facts circumvent the rule by pleading tort law.

Accordingly, we VACATE the portion of the opinion of the Court of Appeals that remanded the issue of economic duress to

---

**1.** In *Centric* a subcontractor sued a construction management firm and alleged economic duress sufficient to justify the repudiation of a claim settlement agreement and release. Questions were certified from the United States Court of Appeals for the Tenth Circuit. One of those questions asked if Oklahoma law recognized economic duress as an operative basis for avoiding a mutual release and settlement, and asked for the elements. This Court held that economic duress may be a basis for avoiding a mutual release and settlement of claims and listed the elements as follows:

"A. The settlement was the result of a wrongful or unlawful act which
  (1) was initiated by the coercing party,
  (2) was committed with knowledge on the part of the coercing party of the impact it would have,
  (3) was made for the purpose of, and reasonably adequate to secure coercion over the other, and
  (4) resulted in obtaining undue advantage over the other.

"B. The act or acts complained of in (A) must have deprived the coerced party of its free will, leaving no adequate legal remedy nor reasonable alternative available. In this respect it is not enough that the alleged victim merely show, for example:
  (1) its reluctance to settle,
  (2) its financial embarrassment, or
  (3) its business necessities.
"C. Detriment to the complaining party caused thereby.

**2.** At the time the petition was filed, July 16, 1984, 12 O.S.1981, § 221 was in effect. It provided "Every action must be prosecuted in the name of the real party in interest...." That statute had been in effect since 1910. Shortly after the lawsuit was filed, the statute was repealed when a new pleading code went into effect. 1984 Okla.Sess.Laws, ch. 164, § 17, now codified as 12 O.S.1991, § 2017(A). Subsection A provides "Every action shall be prosecuted in the name of the real party in interest."

the trial court. The judgment of the trial court is AFFIRMED.

HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE, KAUGER, SUMMERS and WATT, JJ., concur.

OPALA, C.J., concurs in judgment.