2010 OK CIV APP 123

FOSSIL CREEK ENERGY CORPORATION, Plaintiff/Interested Party,

v.

COOK'S OILFIELD SERVICES, Defendant/Third–Party Plaintiff/Appellant,

v.

Admiral Insurance Company, Third–Party Defendant/Appellee.

No. 106,895.

Court of Civil Appeals of Oklahoma, Division No. 2.

May 7, 2010.

As Corrected on Rehearing Aug. 4, 2010.

Certiorari Denied Oct. 25, 2010.

538

Carla R. Stinnett, Gregory J. Denney, Sheri L. Eastham, Simon J. Harwood, Gregory J. Denney & Associates, P.C., Sapulpa, OK, for Defendant/Third–Party Plaintiff/Appellant.

George W. Dahnke, Abowitz, Timberlake & Dahnke, P.C., Oklahoma City, OK, for Third–Party Defendant/Appellee.

DEBORAH B. BARNES, Judge.

¶ 1 Cook's Oilfield Services (Cook's), brings this accelerated appeal[1] of the trial court's summary judgment filed on February 12, 2009, in favor of Admiral Insurance Company (Admiral). Based on our review of the record on appeal and applicable law, we reverse the order of the trial court granting summary judgment because there are controverted issues of material fact. We remand this case for further proceedings in a manner consistent with this Opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The following facts are stipulated by the parties and are not in dispute. Cook's installed a drilling-fluid mud-pit liner or "apron" (the liner) at the site of an oil well (the well site) operated by Fossil Creek Energy Corporation (Fossil).[2] The well site is located in Cimarron County, Oklahoma.

¶ 3 Cook's office is located in Perryton, Texas. Cook's is a sole proprietorship owned by Charles D. Cook, Sr. Western Surplus Lines Agency issued a commercial lines policy (the Policy) on behalf of Admiral to Charles D. Cook, Sr. The Policy was effective from November 18, 2005, to November 18, 2006.

¶ 4 On July 28, 2006, the Oklahoma Corporation Commission (the OCC) investigated

---

1. Rule 1.36, Okla. Sup.Ct. Rules, 12 O.S. Supp. 2004, ch. 15, app. 1. Pursuant to this rule, this appeal stands submitted without appellate briefing.

2. Fossil was formerly known as Spectra Energy. Record (R.), p. 90.

the well site and found, as stated in its Incident and Complaint Investigation Report, that the liner had not been installed correctly, that sides of the liner were down in the pit, and fluids were "contaminating the vertical walls and bottom." [3] On August 1, 2006, the OCC issued a report and recommendation to Fossil to dispose of the drilling fluids, remove the liner, and perform remedial work.

¶ 5 On January 30, 2007, Fossil notified Cook's that it was seeking to hold Cook's responsible for the cost incurred by Fossil in remediating the seepage of drilling fluids from the mud pit. This was the first notice to Cook's of the liner problem and of the leakage from the mud pit. Cook's notified Admiral of Fossil's claim on or about February 7, 2007. On February 12, 2007, and again on June 15, 2007, Admiral notified Cook's that there was no coverage under the Policy.

¶ 6 Fossil filed a petition against Cook's on July 2, 2007, alleging Cook's was negligent, breached its contract with Fossil, and caused Fossil to incur remediation and cleanup expenses. After filing an answer to Fossil's petition, Cook's filed a third-party petition against Admiral, alleging Admiral had breached its contract (i.e., the Policy) with Cook's and acted in bad faith in denying coverage to Cook's. In its answer to Cook's third-party petition, Admiral denied that the Policy affords coverage for the claim made by Fossil against Cook's.

¶ 7 Admiral filed a motion for summary judgment, and Cook's responded. The trial court heard oral argument and took the matter under advisement, pending submission of a reply brief by Admiral. Admiral subsequently filed a reply brief.

¶ 8 In a Journal Entry of Judgment filed on February 12, 2009, the trial court granted Admiral's motion for summary judgment. The trial court found, in pertinent part, that (1) the question of coverage under the Policy is governed by Texas law, (2) the claims asserted by Fossil against Cook's fall within the scope of the absolute pollution exclusion added by endorsement to the Policy and,

therefore, Admiral has no obligation under Part I of the Policy to indemnify Cook's for any loss resulting from those claims, (3) the Policy contains a separate endorsement entitled "Limited Sudden and Accidental Pollution Liability–Property Damage Liability and Cleanup Expenses Extension," but this does not obligate Admiral to indemnify Cook's against Fossil's claims because there is no evidence that the discharge of pollutants was sudden and accidental, or, alternatively, the undisputed facts show that Cook's cannot satisfy Condition c. because the occurrence did not become known to Cook's until more than thirty days after its commencement and it was not reported to Admiral within ninety days, (4) Admiral was not obligated to provide a defense to Cook's in this action because there was no potential coverage under the Policy for any of the claims asserted by Fossil against Cook's, (5) Admiral has not violated its duty of good faith and fair dealing because Admiral owed no duty to defend Cook's and has no duty to indemnify Cook's against any loss in this action, and (6) pursuant to the undisputed material facts and applicable law, Admiral is entitled to summary judgment. From this order of the trial court, Cook's appeals.

### STANDARD OF REVIEW

¶ 9 As recently stated by the Oklahoma Supreme Court:

Under Rule 13(a) of the Rules of District Courts, 12 O.S.2001, ch. 2, app. (Rules of District Courts), a party may move for summary judgment or summary disposition of any issue when the evidentiary materials filed in support of the motion show that there is no genuine issue of any material fact. The moving party must support the motion by attaching and referencing evidentiary materials supporting the party's statement of undisputed facts. *Id.* The opposing party must state the material facts which the party contends are disputed and attach supporting evidentiary materials. *Id.* The court shall grant judgment to one of the parties if it appears that there is no substantial controversy as to any material fact and that one party is

3. R., p. 201.

entitled to judgment as a matter of law. *Id.* at Rule 13(e). All reasonable inferences are taken in favor of the opposing party. *Wittenberg v. Fid. Bank, N.A.*, 1992 OK 165, ¶ 2, 844 P.2d 155, 156. The party opposing the motion cannot, on appeal, rely on any fact or evidentiary material not included or referenced in its statement of disputed facts. Rules of District Courts at Rule 13(b).

Summary judgment settles only questions of law. *Rox Petrol., L.L.C. v. New Dominion, L.L.C.*, 2008 OK 13, ¶ 2, 184 P.3d 502, 504. We review rulings on issues of law by a *de novo* standard pursuant to the plenary power of the appellate courts without deference to the trial court. *Glasco v. State ex rel. Okla. Dept. Of Corrections*, 2008 OK 65, ¶ 8, 188 P.3d 177, 181. Thus, summary judgments are reviewed *de novo. Id.*

*Jennings v. Badgett*, 2010 OK 7, ¶¶ 4–5, 230 P.3d 861.

¶ 10 To prevail as the moving party on a motion for summary judgment, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action. *Akin v. Missouri Pacific Railroad Co.*, 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044.

A party opposing a motion for summary judgment must show "the reasonable probability, something beyond a mere contention, that [he] will be able to produce competent, admissible evidence at the time of trial which might reasonably persuade the trier of fact in his favor on the issue in dispute." *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

## ANALYSIS

### I. Choice of Law

■ ¶ 11 Cook's argues that Oklahoma law should be applied by this Court to resolve the issues presented relating to the Policy. Admiral argues that Texas law should be applied.

■ ¶ 12 This suit was brought in Oklahoma; therefore, Oklahoma choice of law principles must be applied. *Harvell v. Goodyear Tire and Rubber Co.*, 2006 OK 24, ¶ 14 n. 21, 164 P.3d 1028, 1033 n. 21. We must apply Oklahoma's "choice of law rule for contract actions[4] ... *unless the contract terms provide otherwise*[5] ...." *Id.* at ¶ 14, 164 P.3d at 1033–34 (emphasis added). That is, in Oklahoma we abide by "the maxim that a court will not interfere with the contract of the parties absent fraud, duress, undue influence or mistake, and that courts are interested only with the legality of the contract." *Bilbrey v. Cingular Wireless, L.L.C.*, 2007 OK 54, ¶ 9, 164 P.3d 131, 134 (citing *Barnes*

4. "An insurance policy is a contract. The rules of construction and analysis applicable to contracts govern equally insurance policies." *May v. Mid–Century Insurance Co.*, 2006 OK 100, ¶ 22, 151 P.3d 132, 140 (footnotes omitted).

5. Generally, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied...." Restatement (Second) of Conflict of Laws, § 187 (1971). *See also Telex Corp. v. Hamilton*, 1978 OK 32, ¶¶ 7–8, 576 P.2d 767, 768 (implying that, even if the contract had not been entered into and performed in Oklahoma, Oklahoma law would have been applied because the contract so provided); 43 Am.Jur.2d Insurance § 347 ("[w]here it is provided by the contract of insurance itself that it shall be construed in accordance with the laws of a designated place and the stipulation is valid, such stipulation as a general rule controls the construction and effect of the contract ...").

However, "if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue [then the law of the state chosen by the parties will be applied unless] either (a) the chosen state has no substantial relationship ... and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state ... and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws, § 187 (1971). Even if the Restatement analysis for issues that could not have been resolved by an explicit provision in the agreement was applied, Oklahoma law, if found to be chosen by the parties (infra), would govern this dispute. Oklahoma has a substantial relationship to the parties and no state has a materially greater interest in the determination of the issues presented in this case because the performance and the pollution all occurred in Oklahoma.

v. *Helfenbein*, 1976 OK 33, 548 P.2d 1014). Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. *May v. Mid–Century Insurance Co.*, 2006 OK 100, 151 P.3d 132. Generally, absent an ambiguity, insurance contracts are subject to the same rules of construction as other contracts. *Max True Plastering Co. v. U.S. Fidelity and Guaranty Co.*, 1996 OK 28, 912 P.2d 861 (footnote omitted). However, because of their adhesive nature, these contracts are liberally construed to give reasonable effect to all their provisions. *Id.* When interpreting an insurance contract, "words are given effect according to their ordinary or popular meaning." *Id.* at 865 (footnote omitted).

■ ¶ 13 The Policy contains a Service of Suit endorsement which "modifies insurance provided in all coverage parts that are contained in [the Policy]." [6] In this endorsement, the parties agreed on the following:

In the event of [Admiral's] failure to pay any amount claimed to be due, we, at [Cook's] request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such court jurisdiction *and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.* (Emphasis added).

Cook's argues that pursuant to this language in the insurance contract, "Admiral has agreed for this matter to be determined in accordance with the laws of and practice of Oklahoma." [7] Giving effect to this language according to its ordinary and popular meaning, we agree.[8] We find that these words clearly and definitely express the parties'

intent to have this case determined in accordance with the law of any court of competent jurisdiction including the District Court of Cimarron County, Oklahoma, chosen by Cook's. Therefore, pursuant to the agreement of the parties, we find that Oklahoma law governs this dispute.

## II. Coverage Pursuant to the Policy

■ ¶ 14 The Policy contains a Commercial General Liability Coverage Form (the Coverage Form) which states, in pertinent part:

[Admiral] will pay those sums that the Insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" ... to which this insurance does not apply.

The Coverage Form is then modified by numerous endorsements. The endorsements relevant on appeal are (1) the Total Pollution Exclusion Endorsement, (2) the Limited Sudden and Accidental Pollution Extension, and (3) the Texas Changes endorsement.

¶ 15 The Total Pollution Exclusion Endorsement modifies the Coverage Form by completely excluding from coverage any injury or damage caused by pollution. Several pages later, however, the Coverage Form is modified by the Limited Sudden and Accidental Pollution Extension. This endorsement extends coverage for property damage and clean-up expenses caused by pollution in limited circumstances. The endorsement only applies to pollution that is the result of "a sudden and accidental discharge, dispersal, release or escape of oil or gas or other

---

6. R., p. 99.

7. R., p. 178. Admiral does not argue that Oklahoma courts are not courts of competent jurisdiction. We note that a court of competent jurisdiction is one having jurisdiction of a person and the subject matter and the power and authority of law at the time to render the particular judgment. *Cossey v. Cherokee Nation Enterprises, LLC*, 2009 OK 6, ¶ 15, 212 P.3d 447, 454. Oklahoma has personal and subject matter jurisdiction over the parties and this dispute. *See Reeds v. Walker*, 2006 OK 43, ¶ 11, 157 P.3d 100, 107;

and *Gilbert v. Security Finance Corporation of Oklahoma, Inc.*, 2006 OK 58, ¶ 16, 152 P.3d 165, 173.

8. *See, e.g., TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286 (10th Cir.2007) (confronted with the phrase, "[a]ll matters arising hereunder shall be determined in accordance with the law and practice of such Court," the court stated that this addressed the parties' choice of law).

derivatives or pollutants (including any oil refuse or oil mixed with wastes) upon surface land or inland water and only if the 'property damage' and 'clean-up expenses' occur from operations or business conducted by or for [Cook's]...." Furthermore, the extension only applies if both [9] of the following conditions have been met:

  a.  The occurrence was accidental and was neither expected nor intended by [the insured]. An accident will not be considered unintended nor unexpected unless caused by some intervening event neither expected nor intended by [the insured].

  . . .

  c.  The occurrence became known to or by [the insured] within 30 days after its commencement and is reported to [Admiral] within 90 days.

Finally, the Coverage Form is modified by an endorsement entitled Texas Changes. This endorsement states, in pertinent part:

  With regard to liability for ... Property Damage[,] ... unless [Admiral is] prejudiced by the Insured's ... failure to comply with the requirement, no provision of this Coverage Part requiring ... any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

---

9.  The endorsement requires that four conditions be met, but only two (a. and c.) are relevant to this appeal because the facts are undisputed that the other conditions were met.

10.  R., p. 94.

11.  R., p. 178. Cook's has attached an OCC report (R., p. 201) and an excerpt from a deposition of Peter Massion, the president of Fossil (R., p. 205), in support of its assertion that the "problem [at the well site] arose within a 7–14 day time span (July 14–28, 2006)." The OCC report is dated July 28, 2006. In this report the OCC investigator, Richard Kersey ("RKY" in the report), determined that the mud put liner, according to him, was "not installed correctly, sides of liner down in pit, fluids contaminating the vertical walls and bottom." Kersey made this determination during an "Inspection Discovery." Massion's deposition reveals that one to two weeks before Kersey notified Fossil of the leak-

### a. Coverage for Accidental Pollution

¶ 16 Admiral argues that there is no coverage pursuant to the Limited Sudden and Accidental Pollution Extension because the pollution was not sudden and accidental. Admiral states that "there is no evidence that the leakage from the mud pit at the ... well was 'sudden and accidental.' " [10] To overcome Admiral's argument at this summary judgment stage, Cook's must show "the reasonable probability, something beyond a mere contention, that [it] will be able to produce competent, admissible evidence at the time of trial which might reasonably persuade the trier of fact in [its] favor on the issue in dispute." *Davis v. Leitner,* 1989 OK 146, ¶ 15, 782 P.2d 924, 927. Cook's has already presented evidence "that the problem" at the well site possibly arose "within a 7–14 day time span (July 14–28, 2006)." [11] Having already come forward with evidence that may narrow the range of time during which the pollution could have occurred to only one to two weeks, we find not only that Cook's has shown a reasonable probability that it will be able to produce competent, admissible evidence at trial which might reasonably persuade the trier of fact that the pollution was sudden and accidental, but also that the evidence already presented raises a genuine issue of material fact.

### b. Failure to Comply with Notice Requirement

¶ 17 Admiral argues that "it is clear that [Cook's] cannot satisfy Condition c

age Fossil made a determination that the oil well in question was "going to be an unsuccessful reentry." Even though Fossil examined the well presumably around the time its determination regarding reentry was made, Massion received no information from his employees about the mud pit liner or the need to clean up any leakage. The first indication of any leakage was not until Kersey's OCC report. Based on this evidence it can reasonably be inferred by a trier of fact that Fossil examined its well just one to two weeks prior to the OCC report and that the leakage did not occur until sometime during the two weeks prior to July 28, 2006. Although Admiral nevertheless claims that there is no evidence that the accident was sudden and accidental, we note that Admiral has not cited to any evidence that the leakage was *not* sudden and accidental (e.g., evidence that it occurred over an extended period of time).

[of the Limited Sudden and Accidental Pollution Extension], which requires that the occurrence became known to the insured within 30 days of its occurrence and be reported to Admiral within 90 days."[12] "[I]n cases of doubt, words of inclusion are liberally applied in favor of the insured and words of exclusion are strictly construed against the insurer [and] an interpretation which makes a contract fair and reasonable is selected over that which yields a harsh or unreasonable result...." *Max True Plastering Co. v. U.S. Fidelity and Guaranty Co.*, 1996 OK 28, ¶ 8, 912 P.2d 861, 865.

¶ 18 It is undisputed that the occurrence did not become known to Cook's within 30 days. In fact, the pollution occurred sometime in July of 2006 and did not become known to Cook's until January 30, 2007, over six months later. Based solely upon the language found in the Limited Sudden and Accidental Pollution Extension, no coverage could extend to the occurrence because the notice requirement was not met. However, in Oklahoma "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 O.S.2001 § 157.[13] As stated above, the Coverage Form is modified not only by the Total Pollution Exclusion Endorsement and the Limited Sudden and Accidental Pollution Extension, but also by the Texas Changes endorsement. Just as the limited pollution extension affects the total pollution exclusion, the Texas Changes endorsement affects the limited pollution extension. In sum, all three

endorsements, by modifying the Coverage Form, are part of the Coverage Form.

■ ¶ 19 The Texas Changes endorsement, quoted in part above, states that no failure to comply with a notice requirement will bar coverage unless Admiral is prejudiced thereby. Therefore, although Cook's failed to comply with the notice requirement (Condition c.) in the Limited Sudden and Accidental Pollution Extension, Admiral must show that it has been prejudiced by Cook's failure to timely notify Admiral of the occurrence in order for coverage to be excluded based upon this failure. "[A]n insurance policy, a contract of adhesion, is construed to give reasonable effect to its provisions." *Brown v. Patel*, 2007 OK 16, ¶ 11 n. 8, 157 P.3d 117, 122 n. 8 (citations omitted).

¶ 20 The above analysis reveals that whether Admiral was required under the insurance policy to pay Cook's claim is a genuine issue of material fact. The resolution of this issue depends upon the resolution of two sub-issues of disputed fact: (1) whether the leakage from the mud pit was sudden and accidental, and (2) whether Admiral was prejudiced by Cook's failure to comply with the notice requirement. Although only one of these two sub-issues needs to be found in Admiral's favor in order for coverage to be denied, neither can be determined as a matter of law at the summary judgment stage.[14]

### III.  Bad Faith

■ ¶ 21 Cook's argues that Admiral acted in bad faith because it did not undertake

---

12. R., p. 94.

13. *See also Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 27, 160 P.3d 936 (the courts will read the provisions of a contract in their entirety to give effect to the intention of the parties as ascertained from the four corners of the contract).

14. It also cannot be determined at this stage whether Admiral owed Cook's a duty to defend. In *First Bank of Turley v. Fidelity and Deposit Insurance Company of Maryland*, 1996 OK 105, ¶ 13, 928 P.2d 298, 303–304, the Oklahoma Supreme Court set forth the parameters of the duty to defend:

The duty to defend is separate from, and broader than, the duty to indemnify, but the

insurer's obligation is not unlimited. The defense duty is measured by the nature and kinds of risks covered by the policy as well as by the reasonable expectations of the insured. An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to the potential of liability under the policy. The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action. (Emphasis and footnotes omitted.)

Whether Admiral owed Cook's a duty to defend also depends upon the resolution of genuine issues of material fact and, therefore, summary judgment is improper.

any investigation into the facts and circumstances of the case and because it based its denial entirely on an inaccurate reading of the Policy in its file. In order to prove a claim of breach of an insurer's duty of dealing fairly and in good faith, a plaintiff must prove the following elements: 1) the insurer was required under the insurance policy to pay the insured's claim; 2) the insurer's refusal to pay the claim in full was unreasonable under the circumstances because either: a) it had no reasonable basis for the refusal, b) it did not perform a proper investigation of the claim, or c) it did not evaluate the results of the investigation properly; 3) the insurer did not deal fairly and in good faith with the insured; and 4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the injury sustained by the insured. *Andres v. Oklahoma Farm Bureau Mutual Insurance Co.*, 2009 OK CIV APP 97, ¶ 16, 227 P.3d 1102; *see* Oklahoma Uniform Jury Instructions—Civil (2d) No. 22.2. The Oklahoma Supreme Court has stated:

> Every insurance contract carries with it the duty to act fairly and in good faith in discharging its contractual responsibilities. A party prosecuting a claim of bad faith carries the burden of proof and must plead all the elements of the intentional tort. The essence of the tort is the unreasonable, bad-faith conduct of the insurer. A central issue is whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are alleged to be violative of the duty of good faith and fair dealing.

*Garnett v. Government Employees Insurance Co.*, 2008 OK 43, ¶ 22, 186 P.3d 935, 944 (footnotes omitted). "Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious." *Id.*

¶ 22 The trial court granted summary judgment in favor of Admiral on the issue of bad faith. The trial court stated that "[b]ecause there was no potential coverage under the Policy for any of the claims asserted by [Fossil] against [Cook's], Admiral was not obligated to provide a defense to [Cook's] in this action," and "[b]ecause Admiral owed no duty to defend [Cook's] and has no duty to indemnify [Cook's] against any loss in this action, Admiral has not violated its duty of good faith and fair dealing." However, as stated in the preceding section of this Opinion, whether Admiral was required under the Policy to pay Cook's claim is a genuine issue of material fact. Therefore, a determination as to whether Admiral acted in bad faith is premature, and we must find that the trial court erred in granting summary judgment on this issue.

## CONCLUSION

¶ 23 Based on our review of the record on appeal and applicable law, we reverse the order of the trial court granting summary judgment because we find genuine issues of material fact remain on the issue of coverage. Furthermore, we find the decision on the issue of bad faith is premature. We remand this case for further proceedings in a manner consistent with this Opinion.

¶ 24 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, C.J., and FISCHER, P.J., concur.