Lennie V. AGEE, Plaintiff in Error,

v.

Mrs. Clemie L. GANT, surviving wife of Louis C. Gant, deceased, Defendant in Error.

No. 40910.

Supreme Court of Oklahoma.

Feb. 15, 1966.

Rhodes, Crowe, Hieronymus & Holloway, Philip N. Landa, Tulsa, for plaintiff in error.

D. F. Rainey, Okmulgee, Harland A. Carter, Okmulgee, Gerald D. Swanson, John Adkison, Tulsa, for defendant in error.

DAVISON, Justice.

This is an appeal by Lennie V. Agee (defendant below) from a judgment rendered on jury verdict in favor of Clemie L. Gant, surviving wife of Louis C. Gant, deceased, (plaintiff below) for damages for wrongful death of deceased by reason of collision of a car driven by defendant with an automobile in which deceased was a passenger.

The accident took place at about ten o'clock at night on December 16, 1960, about 4 miles north of Okmulgee, Oklahoma, on U. S. Highway 75, with the weather fair and cold, and the highway pavement dry. The defendant was driving north and the deceased was sitting in the car of one Bond, which was stopped in defendant's traffic lane.

Plaintiff's petition alleged the defendant's negligence was; driving at a fast and careless speed of about 60 miles per hour in violation of the statutes, and at a speed that would prevent him from stopping within the assured clear distance ahead, and with not paying proper attention to his driving and other vehicles on the highway, and that with ordinary care defendant would have been able to see the vehicle in time to avoid a collision. Defendant answered by general denial and denial of negligence, and alleged Bond was the agent and servant of deceased and that they were engaged in a joint mission, and the negligence of Bond was imputable to deceased, that Bond and deceased were both intoxicated, and that Bond parked his car on the wrong side of the highway heading south (against traffic) without lights and without warning oncoming traffic, whereby Bond and deceased contributed to the proximate cause of deceased's death. Plaintiff's verified reply made up the issues.

Defendant contends the trial court erred in overruling his demurrer to plaintiff's evidence and in denying his motion for directed verdict.

The distance from Tulsa, Oklahoma, to Okmulgee was about 40 miles, depending on the route traveled. About one o'clock on the afternoon of December 16, 1960, the deceased and one Foster left Tulsa and went to Kiefer, Oklahoma, in deceased's car. Before leaving Tulsa and on the way they consumed a considerable amount of whiskey and some beer. While going south from Kiefer toward Okmulgee the deceased's car ran out of gasoline and Foster started walking south to get some. Foster was soon overtaken by Bond in his car, and upon learning of the situation, Bond took Foster back to the deceased's stalled car and the three of them then drove south in the Bond car to Okmulgee, where deceased bought a can of gasoline. While driving to Okmulgee they drank the balance of a half pint of whiskey that belonged to Bond. Before leaving Okmulgee the deceased bought a pint of whiskey and the opened bottle was passed from one to the other as the car proceeded north out of Okmulgee on U. S. Highway 75, with Bond driving. About 4 miles north of Okmulgee the car lights faded and the car stalled or stopped. Foster testified a car had just passed from the north, and that he got out to push the car, but before he could do so he saw the lights of a car (defendant's car coming from the south) and jumped back, and the collision took place. Bond and deceased were

still in the car and deceased was thrown out and killed. The testimony of plaintiff's witnesses established the above events. Foster also testified defendant's car was going "fast" at 60 or 70 miles per hour, but could possibly have been going more or less than that.

Defendant testified that on December 16, 1960, he had business in the Okmulgee area and ate at a dinner club that evening about 6:00 or 6:30, where he had two whiskey drinks before dinner, and then visited in a friend's home from about 8:00 p. m. to 10:00 p. m., and no drinks other than above mentioned; that he then left Okmulgee and was driving north on U. S. Highway 75 with the car lights on dim at about 47 to 53 miles per hour and that the lights of a passing car blinded him and he then saw the Bond car directly in front of him, parked in his lane of traffic with no lights, and headed toward him in a slightly southwesterly direction; that he immediately applied his brakes and the front center of his car struck the left front of the Bond car, causing the Bond car to swing around and head back north.

The State Highway Patrolman arrived on the scene shortly after the collision and testified his examination showed the accident occurred in the east lane of traffic and that the speed of defendant's car was about 50 miles per hour and left 26 feet of skid marks in the center of the east lane of traffic; that the defendant's car was going north and struck the left front fender of Bond's car, causing it to whirl around headed back north; and that defendant appeared normal, and Bond appeared to be drunk.

Both Bond and Foster testified the Bond car was headed in a northerly direction, but in view of all of the testimony and especially the photos of the two cars showing practically a head-on impact, a reasonable person could only conclude that at the time of impact the Bond car was headed in a southerly direction.

The statute here involved and necessarily relied upon by plaintiff is that part of

47 O.S.Supp.1955, Sec. 121.3(a), now 47 O.S.1961, Sec. 11–801(a), which reads as follows:

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

■■ Defendant contends that a consideration of the evidence reveals an absence of any evidence which proves or tends to prove any acts of negligence charged to defendant in plaintiff's petition. It is defendant's position that this narrows plaintiff's proof of negligence to the circumstance that defendant's car was driven into the other vehicle, and cites the rule that the mere fact an automobile is driven into or against a person or other object in its path does not raise a presumption that the speed was excessive within the meaning of the above quoted statute. Taylor v. Ray, 177 Okl. 18, 56 P.2d 376; National Tank Co. v. Scott, 191 Okl. 613, 130 P.2d 316; and Green v. Thompson, Okl., 344 P.2d 272. This is a correct rule of law and the absence of such presumption permits the jury to consider all of the facts and circumstances revealed by the evidence and determine whether there was primary or contributory negligence within the issues raised by the pleadings. This was the holding in the above cited cases.

■ In Kraft Foods Co. v. Chadwell, 207 Okl. 379, 249 P.2d 1002, a truck ran into a car which some of the evidence showed was parked without lights in the regular lane of traffic on the highway. The truck driver testified he was traveling well within the speed limit and that he was temporarily blinded by the lights of a passing car and that after the car passed he was so close to the parked car that he

could not avoid the collision. Therein we stated that:

"The question of negligence, where there is competent evidence introduced from which reasonable men might draw different conclusions, is one for the jury, and under like circumstances the question of proximate cause is one for the jury."

And in Whitney v. Douglas, Okl., 307 P. 2d 154, we said that a person was required to operate his car in conformity with the above quoted statute, and that:

"It is the duty of a driver of an automobile traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision."

■ Whether the conduct of the operator of a car measures up to the standard of conduct enjoined by the above statute depends in each case upon the factors specified and contemplated therein and the physical conditions at the time and place of the accident. Wade v. Reimer, Okl., 359 P.2d 1071, 1073.

■ The question was whether the defendant exercised the care required by the statute. In Sturdevant v. Kent, Okl., 322 P.2d 408, this court held:

"A motorist colliding with an automobile parked on a city street is guilty of primary negligence proximately causing the collision if he could have seen the parked automobile in time and could have avoided the collision."

■ In the final analysis the driver of a motor vehicle must, at all times, use that degree of care which is reasonable and prudent under the circumstances. This is true despite the so-called right to presume that the other drivers will obey the law. Foster v. Boyd, Okl., 381 P.2d 853.

■ The photos show that the collision took place on a long, straight, and wide stretch of a U. S. Highway. We are inclined to believe that the jury, under all the facts and circumstances, could have properly concluded that if the defendant had kept a proper lookout and had exercised reasonable and prudent care as he approached the scene of the collision, he could have seen the stopped automobile and could have avoided the collision. The question of negligence or no negligence is one for the court, where but one inference can reasonably be drawn from the evidence. Kansas, Oklahoma & Gulf Railway Co. v. Painter, Okl., 333 P.2d 547. We cannot say that, within the purview of the above statute and authorities, the only inference that can be drawn from the evidence is that the defendant was not negligent.

Defendant also complains that the trial court erred in giving instructions to the jury whereby there was submitted to the jury the question of whether Bond was the agent of deceased. It is defendant's position that the evidence established without dispute and as a matter of law that Bond was the agent of deceased, and that the court should have so instructed the jury and in connection therewith instructed that any negligence on the part of Bond was imputed to deceased.

■ The verdict was a general verdict for the plaintiff. The applicable rule is that a general verdict on conflicting evidence presumptively includes a finding of all the facts necessary to establish the prevailing party's claim. Black v. Ellithorp, Okl., 382 P.2d 23. With regard to the issue of contributory negligence, we have repeatedly held that in view of the constitutional provision making contributory negligence a question of fact for the jury, if there is any evidence from which contributory negligence may be reasonably inferred, the verdict on that issue is conclusive. Const., Art. 23, Sec. 6; Cosmo Construction Company v. Loden, Okl., 352 P. 2d 910. Under these rules the findings of the jury on this issue and the issue of agency were presumptively such as to establish the prevailing plaintiff's claim.

■ The burden of proving agency was on the defendant. In Coe v. Esau, Okl., 377 P.2d. 815, we held that the law itself makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence but also its nature and extent, rests ordinarily upon the party who alleges it.

We have narrated above the circumstances under which the deceased happened to be in Bond's car at the time of the collision. There was no express agreement between them as to agency and the circumstances are the evidence of agency or non-agency. In Farmers Nat. Grain Corporation v. Young, 187 Okl. 298, 102 P.2d 180, 185, we quoted the following definition of agency:

"'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'"

And in 3 Am.Jur.2d, Agency, Sec. 2, p. 420, it is stated that one of the prime elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent.

There is nothing in the record that shows deceased exercised any control over Bond, or that affirmatively indicates that Bond was subject to the control of deceased. It appears equally plausible that Bond was voluntarily extending a courtesy to a stranded motorist with no idea on either side of control. There is also the circumstance that at the time of the collision the Bond car was headed away from the location of the deceased's car.

■ We believe the issue is one for determination by the jury under the rule stated in Ries v. Cartwright, Okl., 297 P.2d 367:

"Where the evidence is conflicting or where reasonable men may differ in conclusions therefrom, the issue of master and servant or of principal and agent is one of fact for determination by the jury."

■ The trial court rightly presented the issue of agency to the jury.

As a part of the last proposition of error, the defendant complains the court instructed the jury relative to joint venture on the part of Bond and deceased, when that issue was not presented by the pleadings. Defendant is in error. Defendant's answer, as filed, did not plead joint venture, but during the trial (133 of record) the defendant sought and was granted permission to amend the answer to plead a joint venture by Bond and deceased.

Defendant further urges the trial court erred in overruling his objection to the selection of a jury from the jury panel.

The circumstance on which this claimed error is based was that on the morning of the day prior to the trial of the present case, the judge announced that up to twenty jurors would be excused upon their holding up their hands, if they were busy or needed to be with their business. Fifteen jurors were excused by the judge pursuant to this announcement. Counsel for defendant made timely objection when this case was called for trial the following day, and upon the objection being overruled, a jury was selected. Counsel for defendant waived his third peremptory challenge. The action of the judge is best explained by excerpts from his statements of his reasons for excusing these jurors:

"If you will remember at the beginning of this term of Court we had the Poulton Case which was a very serious case and there was a great deal of feeling in this town or had been in the past. I required Jurors to serve that normally I would have excused that requested me. At the end of that trial I excused a considerable number of Jurors. From the time I excused those Jurors until this last week when this Gant Case was tried we had two Courts going. When this case came up it was obvious from the docket that I didn't need another judge because of conflict of attorneys and therefore I

had to try the cases alone, which meant that I didn't need near as many Jurors."

"Now we are paying Jurors $7.50 a day and I feel it's my duty to try to keep the Jury panel as close to the number needed as I can. I didn't want to arbitrarily turn loose any particular twenty. * * *"

"All right. That I would like a show of hands on those Jurors who needed to be off and incidently, those who had contacted me previously. There were a show of some fifteen hands of people who wanted to get off. There was men and women and I have no idea what their financial condition was or what their jobs were—* * *"

"Instead of getting twenty some odd Jurors, there was fifteen that said they needed to get off and those fifteen were excused. We were still left with more Jurors than I actually needed but I didn't want to get in a position of arbitrarily knocking some off because then you could probably say that I had picked some out. * * *"

Defendant contends this constituted a mass excuse of businessmen as a class and was a perversion of the jury wheel system (38 O.S.1961, Sec. 18, et seq., with amendments) of drawing the general panel of jurors for jury service, and was a violation of the due process clause, Article 2, Section 7, of the Oklahoma Constitution. Defendant argues that by such action the judge excused as a class those jurors who were in the higher economic bracket and left on the panel those in the lower economic bracket, and in effect deprived defendant of an impartial jury drawn from a cross-section of the community.

Defendant relies on Thiel v. Southern Pacific Company, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, 166 A.L.R. 1412, to sustain his contention of reversible error. In that case the judgment was rendered on jury verdict in a U. S. District Court in California, denying plaintiff (Thiel) any recovery in a personal injury action. Both Federal and State statutes were treated as determining the qualifications and exemptions of federal jurors. In the hearing on plaintiff's motion to strike the entire jury panel the evidence and admissions established that the clerk and jury commissioner, in the preparation of the jury list, deliberately and intentionally excluded from the jury list all persons who worked for a daily wage, longshoremen, iron craft workers, bricklayers, carpenters, and machinists, because experience showed such persons practically always sought to be excused on the ground of financial hardship, and their inclusion made it difficult to obtain a list of persons qualified to serve as jurors. It was admitted that "businessmen" and their wives constituted 50% of the jury lists. The above officials generally used the city directory as the source of names of prospective jurors, but they denied they consciously chose according to wealth or occupation.

In the Thiel case a majority of the court reversed the judgment for new trial on the ground that jury competence was not limited to those who earned their livelihood on other than a daily basis, and the pay period of an individual was irrelevant to eligibility and capacity to serve as a juror, and that the intentional exclusion of such a class would do violence to the democratic nature of the jury system, which contemplated an impartial jury drawn from a cross section of the community. Annotation, 166 A.L.R. 1422.

It is our conclusion that the Thiel case is not applicable. In the present case no evidence was taken to disclose those excused were of a particular group classification as to business, profession, work, earnings, and economic bracket, or as to the composition of the remaining general panel of jurors, whereby defendant was deprived of an impartial jury drawn from a cross section of the community. We are asked to presume that the mere excusing of 15 members of an overly large general panel of jurors did have this effect. We cannot do this. The descriptive phrase "busy or needed to be with their business" is so broad

as to encompass a multitude of activities and pursuits of diverse members of a general jury panel.

Under the provisions of 38 O.S.1961, Sec. 20, the judge is required to determine in advance the approximate number of jurors reasonably necessary for jury service. Title 38 O.S.Supp.1963, Sec. 21, provides for drawing this number of names of jurors from the jury wheel, and recites:

"The court may excuse or discharge any person drawn and summoned as a grand or petit juror, whenever, in its discretion, such action shall be deemed expedient."

In Collier v. State, 47 Okl.Cr. 339, 288 P. 388, the court held no fixed rule can be applied to the numerous reasons why a juror may be excused from the regular panel.

As stated above, the excusing of the 15 jurors did not per se deprive the defendant of the kind and type of jury contemplated and required by law. It was therefore necessary for defendant to show a material prejudice. The trial court believed the jury panel to be competent and qualified. In Kansas City Southern Railway Company v. Norwood, Okl., 367 P.2d 722, this court stated:

"A large discretion is vested in the trial court in determining the competency and qualifications of jurors, and its action should never be disturbed by an appellate court, unless an abuse of such discretion is clearly apparent.

"To entitle a defendant to successfully challenge a panel of jurors, the burden is upon the defendant to show that the illegality or wrong which is the basis of such challenge is such as to have caused the defendant to suffer material prejudice."

And in 50 C.J.S. Juries § 195, p. 928, the following statement of law is set out:

"All that the parties may demand is a fair and impartial jury, composed of jurors possessing the requisite statutory qualifications, and selected and impaneled in the mode prescribed by law, and without illegal discrimination of any character. * * *"

The defendant has not shown that he was deprived of a proper and impartial jury. Affirmed.

JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY and LAVENDER, JJ., concur.

HALLEY, C. J., and HODGES, J., dissent.