342 So.2d 1 (1976)
Anita OLIVER, by and through her Mother and Next Friend, Cathy Oliver, and Cathy Oliver, as the Mother of Anita Oliver
v.
Ernest C. BROCK et al.
SC 1989.
Supreme Court of Alabama.
December 30, 1976.
Rehearing Denied February 11, 1977.
Richard W. Bell, of Bell, Johnson & Hill, Pelham, for appellant.
McCoy Davidson, of Roberts & Davidson, Tuscaloosa, for appellees.
SHORES, Justice.
Anita Oliver, through her mother, Cathy Oliver, brought suit against Bryan Whitfield Memorial Hospital of Demopolis, Dr. F. S. Whitfield, Dr. Paul Ketcham and Dr. E. C. Brock, alleging that the plaintiffs had retained Drs. Whitfield, Ketcham and Brock to treat her for injuries received as a result of an automobile accident. The allegations are that ". . . the Defendant, Ernest C. Brock, was consulted by the Defendants, F. S. Whitfield, and Paul Ketcham, as to the diagnosis of the Plaintiff's injury, course of care and treatment to the *2 Plaintiff, and the Defendant, Ernest C. Brock, responded by providing technical medical information to the Defendants, F. S. Whitfield and Paul Ketcham, for the diagnosis, care and treatment of the Plaintiff, Anita Oliver."
The trial court granted Dr. Brock's motion for summary judgment and the plaintiffs appealed.
The motion for summary judgment was supported by three affidavits, Dr. Brock's own and that of Drs. Whitfield and Ketcham.
Dr. Brock's affidavit stated:
"I am Ernest C. Brock, one of the Defendants in the above styled cause; I practice medicine in Tuscaloosa County, Alabama, and have been practicing medicine in Tuscaloosa for several years. I have never seen or talked to Anita Oliver or Cathy Oliver; I have never had Anita Oliver and Cathy Oliver as a patient. I have never been engaged or requested to serve as a consultant in the treatment of Anita Oliver, I was not employed or engaged to consult with the doctors treating Anita Oliver concerning her complaints or medical problems.
"I have never had Anita Oliver as a patient of mine; there has never been the doctor-patient relationship between Anita Oliver and myself; I have never been employed by the parents or guardians of Anita Oliver to treat, diagnose, or assist in any way in the care and treatment of Anita Oliver.
"I have never been employed, or associated by Dr. F. S. Whitfield or Dr. Paul Ketcham of Demopolis, Alabama, to consult with, diagnose or treat Anita Oliver.
"I know Dr. F. S. Whitfield of Demopolis and I have talked to him on the telephone on occasions in the past. During the year 1974 and the early part of 1975, Dr. Whitfield did not mention Anita Oliver's name to me on the phone and I was not employed by him to assist in the treatment of Anita Oliver, or to act as a consultant with him in the treatment of Anita Oliver.
"Anita Oliver has never been my patient, she is not now my patient, I have never been employed or requested to care for or treat Anita Oliver and I have not been employed or requested to advise anyone with regard to her medical problems."
Dr. Whitfield stated by affidavit:
"I am F. S. Whitfield, and I am one of the defendants in the above styled cause now pending in the Circuit Court of Tuscaloosa County, Alabama; I treated the plaintiff following an accident on or about October 1, 1974; that during the period plaintiff, Anita Oliver, was confined to the Bryan Whitfield Memorial Hospital as a patient, Affiant had the occasion to and did call Dr. Ernest C. Brock, a practicing physician in Tuscaloosa, Alabama, with reference to Dr. Brock's recommendations concerning the care and treatment of another patient of Affiant; that during the course of such conversation, Affiant did describe generally the injuries of plaintiff and the type of treatment Affiant was then giving plaintiff, and Dr. Brock did indicate to Affiant that under the circumstances described he thought the treatment to be correct; Affiant did not disclose to Dr. Brock the name of the patient; Affiant's discussion with Dr. Brock was gratuitous on his part and for the guidance of Affiant in connection with the treatment of plaintiff; Affiant did not employ Dr. Brock to care for or treat plaintiff and Dr. Brock did not care for or treat plaintiff to the knowledge of Affiant. In the discharge summary dictated by Affiant, Affiant did make note of the telephone conversation with Dr. Brock and of the suggestions made to Affiant by Dr. Brock but did not suggest and does not now suggest that Dr. Brock was in any way employed by him or the plaintiff in connection with the care and treatment of plaintiff or plaintiff's injuries, and the fact is that Dr. Brock was not so employed and was never employed to care for or treat plaintiff's said injuries or to advise anyone with regard thereto." (Emphasis Supplied)
Dr. Ketcham's affidavit follows:
"I am Paul Ketcham, and I am one of the defendants in the above styled cause now pending in the Circuit Court of Tuscaloosa *3 County, Alabama; I treated the plaintiff following an accident on or about October 1, 1974; I had absolutely no contact whatsoever with Dr. Ernest C. Brock, a practicing physician in Tuscaloosa, Alabama, concerning the care and treatment of the plaintiff, Anita Oliver, at any time during the period I participated in her care and treatment; Dr. Brock did not, so far as I am aware, have any contact with the plaintiff while she was a patient at Bryan Whitfield Memorial Hospital following said accident."
In opposition to the motion for summary judgment, the following affidavit of Cathy Oliver, mother of Anita, was offered:
"AFFIDAVIT OF CATHY OLIVER IN OPPOSITION TO DEFENDANT ERNEST BROCK'S MOTION FOR SUMMARY JUDGMENT
"STATE OF ALABAMA COUNTY OF SHELBY
"I, Cathy Oliver, being first duly sworn says:
"That I am the Plaintiff in the law suit involving Dr. Ernest C. Brock and that I am the Plaintiff who is suing Dr. Ernest Brock as the mother of Anita Oliver and as the next friend of Anita Oliver. That my daughter, Anita Oliver, was a patient in the Bryan Whitfield Memorial Hospital in October, 1974. While my daughter was a patient at that hospital, I became concerned regarding the care and treatment rendered or done by Dr. Whitfield and Dr. Ketcham. Dr. Whitfield told me that he would call Dr. Brock in Tuscaloosa to get some advise [sic] on how to treat my daughter's injuries. Dr. Whitfield later told me that he had talked with Dr. Brock and that Dr. Brock told him that Dr. Whitfield was treating the injuries correctly and told him to continue the same treatment.
"I have reviewed the chart prepared by the Defendants stating the names of the doctors who treated my daughter. On a page marked `Discharge Summary', I have read that Dr. Brock was consulted and assisted in prescribing the treatment for my daughter. I sincerely believe that Dr. Brock took part in the treatment of my daughter and that he is at fault for the serious injuries suffered by my daughter as a result of this treatment.
 /s/ Cathy Oliver
 CATHY OLIVER
"Sworn to and subscribed before me this 2 day of June, 1975.
 /s/ Dianna Dobbs
 NOTARY PUBLIC"
The question before us is whether, based upon the supporting affidavits, Dr. Brock has carried the burden placed upon a movant for summary judgment to demonstrate that there is no genuine issue of material fact and that he is entitled to prevail on the motion as a matter of law. Stated differently, the issue is whether a triable issue exists as opposed to resolution of that issue.
A physician owes his patient the duty of due care in his treatment of that patient. That is not controverted. The question is whether there is any evidence to suggest that a physician-patient relationship was ever created between Dr. Brock and the plaintiff patient. The general rule is stated in 61 Am.Jur.2d, Physicians, Surgeons, and Other Healers, § 96:
"A physician is under no obligation to engage in practice or to accept professional employment, but when the professional services of a physician are accepted by another person for the purposes of medical or surgical treatment, the relation of physician and patient is created. The relation is a consensual one wherein the patient knowingly seeks the assistance of a physician and the physician knowingly accepts him as a patient. The relationship between a physician and patient may result from an express or implied contract, either general or special, and the rights and liabilities of the parties thereto are governed by the general law of contract, although the existence of the relation does not need to rest on any express contract between the physician and the person treated. However, the voluntary acceptance of the physician-patient relationship by the affected parties *4 creates a prima facie presumption of a contractual relationship between them. A physician may accept a patient and thereby incur the consequent duties although his services are performed gratuitously or at the solicitation and on the guaranty of a third person. . . ."
In the instant case Dr. Brock says that he has never seen Anita Oliver as a patient, or otherwise. He has never been engaged or requested to serve as a consultant in the treatment of Anita Oliver either by her parents or the doctors treating her. Dr. Ketcham concurs in this statement and Dr. Whitfield says that he called Dr. Brock on the telephone about another of his patients and, during the course of conversation, described generally the injuries suffered by Anita and the type treatment he was administering to her. Dr. Whitfield at no time disclosed to Dr. Brock his patient's name, the conversation was completely gratuitous on his part, and he did not attempt to employ Dr. Brock to care for or treat the patient. He did not suggest that Dr. Brock was in any way requested to advise anyone with respect to the treatment being given the plaintiff.
Mrs. Oliver says only that she became concerned about her daughter and that Dr. Whitfield told her he would call Dr. Brock to get some advice as to treatment. She says that he later told her that he had talked with Dr. Brock and ". . . that Dr. Brock told him that Dr. Whitfield was treating the injuries correctly."
We fail to see any evidence from which it could be concluded that Dr. Brock has consented to treat the child, or any from which it could be inferred that he consented to act in a consulting capacity. Mrs. Oliver's statements to the effect that Dr. Whitfield told her that Dr. Brock told him that Dr. Whitfield was treating the injuries correctly, and that she believes that Dr. Brock took part in the treatment, falls short of the kind of evidence required by ARCP 56(e). This rule provides that when affidavits are used to support or oppose a motion for summary judgment ". . . shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Emphasis Supplied)
These requirements are mandatory. Sartor v. Arkansas Natural Gas Corp., (La. 1944), 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967. Mrs. Oliver states in her affidavit that she "sincerely believes" that Dr. Brock took part in the treatment of her daughter. However, it has been held that belief, no matter how sincere, is not equivalent to knowledge that a statement in an affidavit that the affiant verily believes does not satisfy the requirements of Rule 56(e). Jameson v. Jameson, 85 U.S.App.D.C. 176, 176 F.2d 58 (1949). Apart from her belief that Dr. Brock took part in the treatment of her daughter, Mrs. Oliver offers only the hearsay statements of Dr. Whitfield, who told her that Dr. Brock told him that he was treating the child correctly. Dr. Whitfield denies that he ever asked Dr. Brock to take part in the treatment of the child and denies that Dr. Brock did so. He admits making only a casual reference to the condition of this patient in the abstract, without mentioning her name, during the course of a conversation with Dr. Brock about another patient, and that based upon his description of the injury and treatment, Dr. Brock responded that the treatment seemed to be correct. Whether or not a physician-patient relationship exists depends upon the facts in each case, but some facts must be supplied to support a conclusion that the relationship has been created. In this case, there are no facts which can support the conclusion that the relationship ever existed between Dr. Brock and the patient. Mrs. Oliver contends in her affidavit that she has reviewed the chart prepared by the defendant physicians stating the names of the doctors who treated her daughter. She says she has read on the "discharge summary" that Dr. Brock was consulted and assisted in prescribing the treatment of her daughter. However, that document is not made a part of the record. ARCP 56(e) requires that sworn or certified copies of all *5 papers or parts thereof referred to in an affidavit (in support of or in opposition to a motion for summary judgment) shall be attached thereto or served therewith.
". . . This means that if written documents are relied upon they actually must be exhibited; affidavits that purport to describe a document's substance or an interpretation of its contents are insufficient. . . ." Wright & Miller, Federal Practice and Procedure: Civil § 2722.
There is nothing in this record to support the allegation that Dr. Brock took any part in the treatment of Anita Oliver, by way of advising her physicians, or otherwise. The judgment of the trial court in granting motion for summary judgment on his behalf is, therefore, affirmed.
AFFIRMED.
HEFLIN, C.J., MADDOX and FAULKNER, JJ., and SIMMONS, Retired Circuit Judge, sitting by designation of the Chief Justice, concur.
BEATTY, J., concurs specially.
BEATTY, Justice (concurring specially):
The mere discussion between professional people of hypothetical situations cannot be viewed as a basis for liability. To hold otherwise would tend to adversely affect the quality of the services they offer to members of the public. Physicians, lawyers, dentists, engineers, and other professionals, by comparing problem-solving approaches with other members of their disciplines, have the opportunity to learn from one another. Possessing this freedom, they are better positioned to bring theory into practice for the benefit of those whom they serve. Our decision in this case preserves these essential learning situations for all professional people.