2000 OK 79

Sarah J. FRANKLIN, Plaintiff/Appellant,

v.

Kyle TOAL, M.D., and Norman Regional Hospital Authority, a Public Trust, Defendants/Appellees.

No. 91,557.

Supreme Court of Oklahoma.

Oct. 10, 2000.

As Corrected Feb. 26, 2001.

Rehearing Denied Feb. 27, 2001.

Danny K. Shadid, Robert Trent Pipes, Oklahoma City, OK, for Appellant.

John M. Perry III, Hilton H. Walters, John M. Weaver, Christopher T. Yanda, Perry, Rife & Walters, Oklahoma City, OK, for Appellee, Kyle Toal, M.D.

Glen D. Huff, John Hunt Sparks, Foliart, Huff, Ottaway & Bottom, Oklahoma City, OK, for Appellee, Norman Regional Hospital Authority.

HODGES, J.

## I. ISSUE

¶ 1 The issue in this case is whether the trial court erred in denying the appellant's Motion for directed Verdict, Motion for Judgment Notwithstanding the Verdict, and Motion for New Trial.

## II. PROCEDURAL HISTORY

¶ 2 Sarah J. Franklin, plaintiff, filed this medical malpractice suit against Kyle Toal, M.D. and Norman Regional Hospital Authority (the Hospital), a public trust. Finding the Hospital was not a political subdivision as defined by title 51, section 152(8)(d) of the Oklahoma Statutes, the district court granted plaintiff's motion for partial summary adjudication on the issue.

¶ 3 At the trial's end, the plaintiff moved for a directed verdict which the trial court denied. The jury rendered verdicts in favor of both defendants. Thereafter, the district court denied plaintiff's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.

¶ 4 The plaintiff appealed. The Court of Civil Appeals affirmed the judgment in favor of both Dr. Toal and the Hospital. The Court of Civil Appeals found that there were competent facts on which the jury could find the defendants exercised ordinary care.

### III. FACTS

¶ 5 In December of 1995, Sarah Franklin was diagnosed with atrial septal defect (ASD), a hole in her heart. In Ms. Franklin's case, the hole was between the two upper chambers of her heart and allowed blood to flow between the chambers in an abnormal manner. The hole was about the size of quarter in width and two quarters in length and required surgery to repair. Because of the ASD, the right ventricle was two to three times a normal size, and the total heart size was one and one-half to two times a normal size. In addition to the enlarged heart, Ms. Franklin had a pectus excavatum, a deformity of the ribs and sternum which caused the sternum to press on the heart.

¶ 6 Ms. Franklin was referred to Dr. Kyle Toal, who specialized in cardiovascular surgery. On February 5, 1996, Dr. Toal performed heart surgery on Ms. Franklin at the Hospital. The procedure required severing Ms. Franklin's sternum, stopping her heart from beating, and placing her on a heart-lung bypass machine. After her chest cavity was opened, a phrenic nerve pad, was placed beneath her heart. The phrenic nerve pad was heart-shaped, slightly over seven inches wide at its widest point, and about six inches long. It was made of a white, non-blood absorbing material. The cord attached to the pad had been removed. The cord should have been placed outside the incision to remind the surgeon that the pad had not been removed from the chest cavity before closing. It is the general practice of surgeons to have this cord removed. After the pad was in place, an icy solution containing chemicals was put around Ms. Franklin's heart to lower its temperature to near freezing. The purpose of the pad's insertion was to prevent damage to the phrenic nerve on the backside of the heart and to prevent Ms. Franklin's body temperature from warming her heart.

¶ 7 After the repair was complete, all the air was removed from both chambers of Ms. Franklin's heart. As the air was being removed from the heart chambers, the warming process began and the icy slush was removed. Normally the phrenic nerve pad is removed at this time. However, the pad was not removed from Ms. Franklin's chest cavity before the incision was closed. In a typical ADS surgery, the pad is removed by the surgeon slipping a hand under the heart and sliding the pad out. The heart generally does not have to be manipulated to remove the pad. Neither Dr. Toal nor any of the other members of the surgical team saw the pad while closing the incision.

¶ 8 Ms. Franklin's enlarged heart made it more irritable and increased her risk of ventricular fibrillation (ineffective contraction of one heart chamber). This risk caused Dr. Toal to avoid manipulating the heart any more than necessary. In spite of these risks, the surgery itself was without any unusual complications and went as it should have. Nothing out of the ordinary happened during the actual ADS repair. The only non-standard occurrence was that the phrenic nerve pad was not removed before closing the incision. Even though the nurses responsible for the count list reported to Dr. Toal that everything had been counted, the pad was not on the Hospital's count list and was not reported as retained in Ms. Franklin's chest cavity. It was not part of the Hospital's policy to include the phrenic nerve pad on the count list.

¶ 9 About two and one-half weeks after the surgery for the ADS repair, Ms. Franklin began to have flu-like symptoms. Dr. Toal ordered a chest x-ray. After a white line was apparent on the first x-ray, Dr. Toal ordered an additional x-ray. When the white line had not disappeared on the second x-ray, Dr. Toal contacted the Hospital and found the pad was not included on the count list.

After getting the results of an echocardiogram, Dr. Toal concluded that the pad may have been retained in Ms. Franklin's chest cavity.

¶ 10 On March 1, 1996, Dr. Toal performed a second surgery, this time to remove the pad. He made about a one and one-half inch incision. He slipped the pad out through the incision and closed the opening. Ms. Franklin continued to recover without further physical complications. However, she had some emotional and psychological problems. The facts were disputed as to whether these problems were a result of having to undergo the second surgery.

¶ 11 At the time of Ms. Franklin's surgery, Dr. Toal had performed approximately 1,800 surgeries using a phrenic nerve pad. Until Ms. Franklin's surgery, he had never failed to remove the pad before closing. He admitted that the pad had not always been visible in the previous surgeries; nonetheless, he had always removed the pad. He also admitted: (1) he had a duty to remove the pad, (2) he had control of the pad, (3) only the surgeon removes the pad, (4) the retention of the pad was not a normal surgical risk, (5) he forgot to remove the pad, (6) there was no medical reason for leaving the pad, and (7) if he had remembered the pad, he would have removed it. There was no judgment involved in whether the pad should have remained in Ms. Franklin or removed. It is unquestioned that it should have been removed before closing the incision. Dr. Toal denied negligence urging that he had used ordinary care under the circumstances.

## IV. JURY'S VERDICT

¶ 12 A jury verdict will not be disturbed on appellate review if there is "any competent evidence reasonably tending to support the jury verdict." *Nealis v. Baird*, 1999 OK 98, ¶ 47, 996 P.2d 438, 456. "The sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which" does not support the verdict. *Id.*

¶ 13 A motion for a directed verdict may not "be sustained unless there is an entire absence of proof on a material issue." *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 6, 948 P.2d 298, 302. All evidence favorable to the non-moving party and inferences drawn therefrom, must be regarded as true and all evidence favorable to the moving party must be disregarded. *Id.* A motion for judgment notwithstanding the verdict should be sustained only "[w]hen a motion for directed verdict made at the close of all of the evidence should have been granted." Okla. Stat. tit. 12, § 698 (1991).

### A. VERDICT IN DR. TOAL'S FAVOR

¶ 14 On appeal Ms. Franklin contends that Dr. Toal admitted all of the elements of negligence, leaving no substantial controversy. The elements of negligence are: "(a) a duty owed by the defendant to protect the plaintiff from injury, (b) a failure to properly exercise or perform that duty and (c) plaintiff's injuries proximately caused by the defendant's failure to exercise [the] duty of care." *Thompson v. Presbyterian Hospital Inc.*, 1982 OK 87, ¶ 7, 652 P.2d 260, 263. A medical provider has a duty to exercise ordinary care in delivery of professional services. *Jackson v. Oklahoma Mem'l Hosp.*, 1995 OK 112, ¶ 13, 909 P.2d 765, 772. Generally, the question of negligence is one for the jury. *Flanders v. Crane Co.*, 1984 OK 88, ¶ 16, 693 P.2d 602, 607; *Agee v. Gant*, 1966 OK 31, ¶ 16, 412 P.2d 155, 158. However, the question of negligence is for the court to decide if only "one inference can reasonably be drawn from the evidence." *Agee*, 1966 OK 31 at ¶ 16, 412 P.2d at 158.

¶ 15 In giving evidence on the standard of ordinary care, both Dr. Toal and his expert witness, Dr. Bodenhamer, testified that it was Dr. Toal's duty to remove the pad. Dr. Bodenhamer testified that leaving the pad in was not "ordinary medical care" and that it was an avoidable event. Failure to remove the pad was a breach of the duty as articulated by both Dr. Toal and Dr. Bodenhamer and was the proximate cause of Ms. Franklin's injury. Based on Dr. Toal's admissions that it was his duty to remove the

pad, no judgment was involved in the failing to remove the phrenic pad. He simply forgot to remove the pad, and there was no excuse for failing to remove the pad. The only reasonable inference to be drawn from the evidence in the present case was that Dr. Toal was negligent.

¶ 16 We emphasize that the standard of care for medical providers for failing to remove foreign objects from an surgical opening remains ordinary care, not strict liability. *Jackson*, 1995 OK 112 at ¶ 13, 909 P.2d at 772. We reaffirm our decision in *Boyanton v. Reif*, 1990 OK 83, 798 P.2d 603, where we stated: "The question in professional malpractice suits is not whether a physician has made a mistake, but whether he has used 'ordinary care'...." *Id.* at ¶ 7, 798 P.2d at 604. Recognizing that much of what a medical provider does is a matter of opinion, this Court stated: "[A medical practitioner] is not responsible for a mistake in judgment unless that mistake is so gross that it makes the professional conduct substandard." *Id.* at ¶ 7, 798 P.2d at 605. In the present case, no judgment was involved, and if Dr. Toal had remembered the phrenic pad he would have removed it. The evidence lends itself to only one inference: Dr. Toal breached his stated duty to use ordinary care.

¶ 17 Dr. Toal attempts to avert liability by arguing that his attention was diverted from the pad and properly focused on Ms. Franklin's irritable heart. However, he admitted that his attentiveness to these usual incidents involved in an ADS repair was not a justification for failing to remove the pad. Further, reliance on the "correct sponge count" did not relieve Dr. Toal of his duty to remove the phrenic pad. *Aderhold v. Stewart*, 1935 OK 479, 46 P.2d 340, 342–43. None of the factors on which Dr. Toal relies legally excuses his failure to remove the phrenic nerve pad.

## B.  VERDICT IN NORMAN HOSPITAL'S FAVOR

¶ 18 Hospitals have the same duty to exercise ordinary care as physicians. *Harder*, 1997 OK 137 at ¶ 11, 948 P.2d at 304. A hospital's duty is to exercise such care and

protection to its patients as the patient's condition requires. *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 11, 948 P.2d 298, 304. In testifying as to the Hospital's duty to use ordinary care, the manager of surgical services at the Hospital testified this duty includes counting everything that goes into the patient's body to make certain nothing is retained. It is uncontested the Hospital did not count the phrenic nerve pad used in Ms. Franklin's surgery. As a result of this omission, the pad was not removed. As with Dr. Toal, the Hospital failed under its articulated duty to use ordinary care and, thus, was negligent.

¶ 19 The Hospital attempts to avoid liability by relying on the Association of Operating Room Nurses' guidelines effective at the time of Ms. Franklin's surgery. These guidelines did not require the phrenic nerve pad be included on the count list. The Hospital also submitted evidence that other hospitals did not include phrenic nerve pads on their count lists. Compliance with custom and other non-legislative rules does not conclusively establish the degree of care that is legally due. *Jackson*, 1995 OK 112 at ¶ 20 n. 43, 909 P.2d at 775 n. 43. This is especially true where, as in the present case, the Hospital's staff admitted that the duty required more than the custom or the guidelines.

## C.  MOTION FOR DIRECTED VERDICT

¶ 20 We find the district court erred in denying the motion for directed verdict for the plaintiff and against both defendants. Because both Dr. Toal and the Hospital were negligent under their articulated duties for the retention of the phrenic nerve pad in Ms. Franklin, the judgment of the district court is reversed. The issue of the amount of damages remains for determination in the district court.

## V.  COSTS

¶ 21 Lastly is appellant's application for appeal-related costs. Section 978 of title 12 allows for recovery of appeal-related costs when a judgment is reversed. The appellant

is entitled to recover appeal-related costs under section 978.

## VI. CONCLUSION

¶ 22    Because we find that the district court erred in denying the plaintiff's motion for directed verdict, we need not address the other issues raised in this appeal. The judgment of the trial court is reversed. The case is remanded with instructions for the trial court to enter partial summary adjudication on the issue of liability in favor of the plaintiff and against the defendants, for trial on the issue of damages only, and to enter judgment for the plaintiff which is to include appeal-related costs.

COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S JUDGMENT REVERSED; REMANDED WITH INSTRUCTIONS.

¶ 23    SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, WATT, BOUDREAU, JJ.-concur.

¶ 24    LAVENDER, OPALA, WINCHESTER, JJ.-dissent.

¶ 25    KAUGER, J.-recused.