2010 OK 7

Shannon JENNINGS and Brandy Crawford, Individually and as Parents and Natural Guardians of Shelby Jennings, a minor, Plaintiffs/Appellants,

v.

Blake Allen BADGETT, M.D., Individually, and d/b/a Blake Allen Badgett, M.D., P.C., and Integris Baptist Medical Center, Inc., a domestic not for profit corporation, Defendants,

and

Stephen D. Schlinke, M.D., Defendant/Appellee.

No. 105,745.

Supreme Court of Oklahoma.

Feb. 9, 2010.

---

Benjamin J. Butts, Butts & Marrs, P.L.L.C., Oklahoma City, OK, for the appellants.

John Wiggins and Erin A. Renegar, Wiggins Sewell & Ogletree, Oklahoma City, OK, for the appellee.

TAYLOR, V.C.J.

¶ 1 Two questions are presented for our review. The first question, one of first impression, is whether a physician-patient relationship is an indispensable element of a medical malpractice claim against a physician. The second question is whether a physician-patient relationship between the plaintiffs and the appellee doctor exists as a matter of law. We answer the first question in the affirmative and the second question in the negative.

## I. PROCEDURAL HISTORY

¶ 2 On April 25, 2007, Shannon Jennings and Brandy Crawford (Crawford), individually and as parents and natural guardians of Shelby Jennings (Shelby), filed a petition in the District Court of Oklahoma County against Blade Allen Badgett, M.D. (Dr. Badgett); Stephen D. Schlinke, M.D. (Dr. Schlinke); and Integris Baptist Medical Center, Inc., for the alleged negligent delivery, care, and treatment of Shelby on November 21, 2003. Dr. Schlinke moved for summary judgment. The plaintiffs objected to the motion, and Dr. Schlinke replied.

¶ 3 On December 26, 2007, the district court granted summary judgment in Dr. Schlinke's favor.[1] In conformity with Title 12, Section 994(A) of the Oklahoma Statutes,

---

1. After the district court awarded judgment in Dr. Schlinke's favor, the plaintiffs filed an amended petition on January 7, 2008. The amended petition was substantially the same as the petition.

on March 14, 2008, the district court declared its December 26, 2007 order to be final, found that there was no just reason for delay, and expressly directed the filing of the final order. On April 7, 2008, the plaintiffs filed a petition in error appealing the district court's judgment in Dr. Schlinke's favor. On May 6, 2009, the Court of Civil Appeals affirmed the district court. On May 26, 2009, the plaintiffs filed their petition for certiorari. This Court granted certiorari.

## II. SUMMARY JUDGMENT AND STANDARD OF REVIEW

■ ¶ 4 Under Rule 13(a) of the Rules of District Courts, 12 O.S.2001, ch. 2, app. (Rules of District Courts), a party may move for summary judgment or summary disposition of any issue when the evidentiary materials filed in support of the motion show that there is no genuine issue of any material fact. The moving party must support the motion by attaching and referencing evidentiary materials supporting the party's statement of undisputed facts. *Id.* The opposing party must state the material facts which the party contends are disputed and attach supporting evidentiary materials. *Id.* The court shall grant judgment to one of the parties if it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law. *Id.* at Rule 13(e). All reasonable inferences are taken in favor of the opposing party. *Wittenberg v. Fid. Bank, N.A.,* 1992 OK 165, ¶ 2, 844 P.2d 155, 156. The party opposing the motion cannot, on appeal, rely on any fact or evidentiary material not included or referenced in its statement of disputed facts. Rules of District Courts at Rule 13(b).

■ ¶ 5 Summary judgment settles only questions of law. *Rox Petrol., L.L.C. v. New Dominion, L.L.C.,* 2008 OK 13, ¶ 2, 184 P.3d 502, 504. We review rulings on issues of law by a *de novo* standard pursuant to the plenary power of the appellate courts without deference to the trial court. *Glasco v. State ex rel. Okla. Dept. of Corrections,* 2008 OK 65, ¶ 8, 188 P.3d 177, 181. Thus, summary judgments are reviewed *de novo. Id.*

## III. PARTIES' ALLEGATIONS AND CONTENTIONS

¶ 6 The plaintiffs alleged in the petition filed in Oklahoma County District Court that Shelby was born on November 21, 2003. Drs. Badgett and Schlinke negligently caused Shelby to be delivered prematurely resulting in respiratory distress syndrome and in hospitalization in Integris Baptist Medical Center's neonatal intensive care unit. While in the intensive care unit, the hospital's employees negligently caused Shelby to develop vertebral osteomyelitis. Because of the vertebral osteomoyelitis, Shelby has required numerous surgeries and suffers severe, permanent spinal deformity.

¶ 7 The plaintiffs contend that Dr. Badgett contacted Dr. Schlinke for an opinion concerning Crawford's care. Based on Dr. Schlinke's opinion, Dr. Badgett caused Shelby to be delivered prematurely and, but for Dr. Schlinke's opinion, Shelby would not have been prematurely delivered. Dr. Schlinke knew or should have known that Dr. Badgett would rely on his opinion. Dr. Schlinke's negligence caused or contributed to Shelby' injuries and, thus, Dr. Schlinke is also liable for the injuries.

¶ 8 Dr. Schlinke's position is that in order to maintain a medical malpractice action against a physician, there must be a physician-patient relationship. He contends that under the facts no physician-patient relationship was formed. Thus, he had no duty to the plaintiffs and cannot be held liable for Shelby's injuries.

## IV. UNDISPUTED FACTS

¶ 9 The undisputed facts presented in the evidentiary materials on summary judgment and viewed in the light most favorable to the plaintiffs are as follows. Dr. Badgett called Dr. Schlinke seeking an opinion which Dr. Badgett incorporated into his decision on how to care for Crawford. Dr. Badgett made it clear to Dr. Schlinke, and Dr. Schlinke knew, that Dr. Badgett would be relying on the opinion in determining Crawford's care. Dr. Badgett gave Dr. Schlinke an appropriate history and report on Crawford's then current complications. But for

Dr. Schlinke's advice, Dr. Badgett would not have delivered Shelby on November 21, 2003, but would have "pushed to term." However, it was Dr. Badgett's sole decision regarding Shelby's delivery. Although Dr. Badgett sometimes refers patients to Dr. Schlinke, he did not refer Crawford to Dr. Schlinke.

¶ 10 Further undisputed facts in the evidentiary materials are as follows. Dr. Badgett never asked Dr. Schlinke to enter into a physician-patient relationship with any of the plaintiffs and did not request Dr. Schlinke to co-manage Crawford or Shelby's case. Dr. Schlinke never talked to or saw any of the plaintiffs, did not charge them for professional services, did not provide or attempt to provide them medical care or treatment, was not asked to provide them with medical care or treatment, and did not agree to provide them with medical care or treatment. Dr. Schlinke did not examine any of the plaintiffs, consult with any of the plaintiffs, and did not have access to or look at Crawford's medical chart or records. Dr. Schlinke recognizes that his "informal" opinions may be relied upon by other doctors, that his advice could result in harm to a patient, and that he wants to give the best information that he can to other physicians, but the other physicians have to combine his opinion with the clinical scenario and make the final decision.

## V. NECESSITY OF PHYSICIAN–PATIENT RELATIONSHIP

¶ 11 Medical malpractice involves matters of medical science and occurs when "those engag[ed] in the practice of the healing arts," 76 O.S.2001, § 20.1, fail to "exercise ordinary care in delivery of professional services" when a duty is owed the plaintiff. *Franklin v. Toal,* 2000 OK 79, ¶ 14, 19 P.3d 834, 837. Plaintiffs' have alleged that Dr. Schlinke was negligent in rendering professional services and, in so doing, have brought a medical malpractice action against Dr. Schlinke.

¶ 12 The elements of a medical malpractice action, as with other negligence actions, are (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, (3) an injury, and (4) causation. *Franklin,* 2000 OK 79 at ¶ 14, 19 P.3d at 837.

In other words, the plaintiff must show that the defendant breached a duty owed the plaintiff which caused the plaintiff's injuries. The issue of the existence of duty is a question of law for the court. *Lowery v. Echostar Satellite Corp.,* 2007 OK 38, ¶ 12, 160 P.3d 959, 964. This Court has not directly confronted the issue of whether a physician-patient relationship is essential for imposition of a duty in a medical malpractice action.

¶ 13 An action for malpractice is based on an employment contract. *Funnell v. Jones,* 1985 OK 73, ¶ 5, 737 P.2d 105, 107, *cert. denied,* 484 U.S. 853, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987). To receive the professional services, the patient agrees to be treated, *Scott v. Bradford,* 1979 OK 165, ¶ 8–12, 606 P.2d 554, 556–557, and if the patient is unable to give consent, the consent may be implied. *Rolater v. Strain,* 1913 OK 634, 39 Okla. 572, 137 P. 96. Otherwise, a physician may be liable for assault and battery. *Scott,* 1979 OK 165 at ¶ 8–12, 606 P.2d at 556–557. Because in Oklahoma a physician is not under a general duty to provide professional services to others, *see Jackson v. Mercy Health Ctr., Inc.,* 1993 OK 155, ¶ 5, 864 P.2d 839, 842, the physician must consent to provide the services. The agreement of the physician to treat and the patient to receive treatment is the basis of the employment contract.

¶ 14 Unless the contract expresses otherwise, the law will imply as a contractual term that the physician possesses "that reasonable degree of learning, skill, and experience which is ordinarily possessed by others of [the] profession, that [the physician] will use reasonable and ordinary care and diligence in the treatment of the case which [the physician] undertakes, and that [the physician] will use his [or her] best judgment in all cases of doubt as to the proper course of treatment." *Muckleroy v. McHenry,* 1932 OK 671, ¶¶ 0, 14, 160 Okla. 139, 16 P.2d 123 (Syllabus by the Court). Thus, "the law imposes a duty in the context of a relationship born of a contract [for which] a person injured by substandard performance of [the] duty may bring an action" for medical malpractice and a claim for

breach of contract. *Great Plains Fed. Sav. and Loan Ass'n v. Dabney,* 1993 OK 4, ¶ 2, 846 P.2d 1088, 1095 (Opala, J. concurring). Because the duty in a medical malpractice action is born out of a physician-patient contract, the relationship is essential to an action for a breach of the duty giving rise to the malpractice action.

¶ 15 Most courts addressing the issue have likewise required a physician-patient relationship as a prerequisite to medical malpractice liability. *Oliver v. Brock,* 342 So.2d 1, 3–4 (Ala.1977); *Chatman v. Millis,* 257 Ark. 451, 517 S.W.2d 504, 506 (1975) (but would not say that the relationship must be predicated upon a contractual agreement); *Bradley Center, Inc. v. Wessner,* 250 Ga. 199, 296 S.E.2d 693, 695 (1982); *Flynn v. Bausch, M.D.,* 238 Neb. 61, 469 N.W.2d 125, 128 (1991); *Easter v. Lexington Memorial Hospital, Inc.,* 303 N.C. 303, 278 S.E.2d 253, 255 (1981); *Lownsbury v. Van Buren,* 94 Ohio St.3d 231, 762 N.E.2d 354, 357–358 (2002); *Roberts v. Hunter,* 310 S.C. 364, 426 S.E.2d 797, 799 (1993); *Kelley v. Middle Tenn. Emergency Physicians, P.C.,* 133 S.W.3d 587, 593–594 (Tenn.2004); *St. John v. Pope,* 901 S.W.2d 420, 423 (Tex.1995); *Didato v. Strehler, M.D.,* 262 Va. 617, 554 S.E.2d 42, 47 (2001); *Rand v. Miller,* 185 W.Va. 705, 408 S.E.2d 655, 656 (1991); James L. Rigelhaupt, Jr., Annotation, *What Constitutes Physician–Patient Relationship for Malpractice Purposes,* 17 A.L.R.4th 132 (1982 & Supp. 2009), cases cited therein (hereinafter 17 A.L.R.4th). *But see Stanley v. McCarver,* 208 Ariz. 219, 92 P.3d 849 (2004) (imposing on physician, who was employed by business to conduct a pre-employment tuberculosis screening, a duty to make known other medical abnormalities based on it being foreseeable that the plaintiff would want to know).

¶ 16 While this issue is a matter of first impression in Oklahoma, our resolution is foreshadowed by our previous decisions addressing legal malpractice. We have continuously required that a plaintiff claiming legal malpractice prove an attorney-client relationship. *Worsham v. Nix,* 2006 OK 67, ¶ 31, 145 P.3d 1055, 1065 (citing *Manley v. Brown,* 1999 OK 79, 989 P.2d 448) (a plaintiff in a legal malpractice action must prove, among

other things, an attorney-client relationship); *Norton v. Hughes,* 2000 OK 32, ¶ 11, 5 P.3d 588, 591 (A plaintiff claiming legal malpractice must prove "the existence of an attorney-client relationship."); *Haney v. State,* 1993 OK 41, ¶ 4, 850 P.2d 1087, 1089 ("One of the requisite elements of a legal malpractice claim is the existence of an attorney-client relationship."); *Allred v. Rabon,* 1977 OK 216, ¶ 11, 572 P.2d 979, 981 (A plaintiff claiming legal malpractice must prove "the existence of the relationship of attorney and client between himself and the defendant.").

¶ 17 By finding the element of duty in a medical malpractice action requires a physician-patient relationship, we are not disallowing a cause of action for medical malpractice by a third-party beneficiary, such as a child, based on negligent prenatal care or a negligent delivery. Part of the purpose of a contract for medical care of a pregnant female is to insure the health of the child. In *Nealis v. Baird,* 1999 OK 98, 996 P.2d 438, we recognized that the parents of a prematurely-born child could bring a wrongful death action on the child's behalf against the mother's treating physicians. In *Graham v. Keuchel,* 1993 OK 6, 847 P.2d 342, we allowed that a wrongful death claim could be brought on behalf of an infant for a physician's failure to administer a drug after a previous delivery which would have prevented the mother's Rh-positive sensitization. In this regard, this Court allowed that the intended beneficiaries of a will could bring a legal malpractice claim or contract claim against the attorney drafting the will. *Leak–Gilbert v. Fahle,* 2002 OK 66, ¶ 27, 55 P.3d 1054, 1062.

## VI. THE EXISTENCE OF A PHYSICIAN–PATIENT RELATIONSHIP

¶ 18 The next question is whether the undisputed facts were sufficient to prove the existence of a physician-patient relationship between Dr. Schlinke and Crawford. Although the question of duty is one for the courts, *Lowery,* 2007 OK 38 at ¶ 12, 160 P.3d at 964, the question of the formation of a physician-patient relationship "is a question of fact, turning upon a determination of whether the patient entrusted his treatment

to the physician and the physician accepted the case." *Fruiterman v. Granata*, 276 Va. 629, 668 S.E.2d 127, 135 (2008) (citing *Lyons v. Grether*, 218 Va. 630, 239 S.E.2d 103, 105 (1977)); *Irvin v. Smith*, 272 Kan. 112, 31 P.3d 934, 940–941 (2001). On a motion for summary judgment when the material facts are undisputed and the evidentiary materials and facts show one party is entitled to judgment, the court may decide the issue as a matter of law. *See Glasco*, 2008 OK 65 at ¶ 36, 188 P.3d at 188.

¶ 19 It is unquestioned in Oklahoma and other jurisdictions that an attending or treating physician has the requisite connections with the patient to create a physician-patient relationship. *See Jackson v. Okla. Mem'l Hosp.*, 1995 OK 112, ¶ 12, 909 P.2d 765, 772. In *Jackson*, this Court set out evidence in that case which showed that the defendant doctor, a faculty physician at a teaching hospital, was the plaintiff's attending physician. *Id.* at ¶ 11, 909 P.2d at 771–772. This Court concluded that the defendant doctor was the attending physician and, as such, could be held liable for medical malpractice. In other medical malpractice cases previously decided by this Court, treating physicians were implicitly deemed to have the requisite relationship with a patient necessary to maintain a medical malpractice action against them. *Franklin*, 2000 OK 79, 19 P.3d 834; *Smith v. Karen S. Reisig, M.D., Inc.*, 1984 OK 56, 686 P.2d 285. In the present case, the plaintiffs do not assert, and there is no evidentiary material supporting a finding, that Dr. Schlinke was the plaintiffs' attending or treating physician. Thus, we turn to other indicia of a physician-patient relationship.

¶ 20 This Court has not addressed whether a physician-patient relationship exists when the physician has not examined, diagnosed, or treated the patient. However, courts generally agree that, under similar facts to those before us, a physician's discussion with a treating physician concerning a patient, without more, does not create a physician-patient relationship and, thus, does not create a duty on the part of the non-treating physician. *Adams v. Via Christi Reg'l Med. Ctr.*, 270 Kan. 824, 19 P.3d 132, 139–140 (2001), and cases cited therein; *Flynn v. Bausch*, 238 Neb. 61, 469 N.W.2d 125, 128 (1991), and cases cited therein; *Diggs v. Ariz. Cardiologists, Ltd.*, 198 Ariz. 198, 8 P.3d 386, 389, 391 ("Generally, where a physician has been informally consulted, the courts deny recovery for negligence[, and] where treating physician exercises independent judgment in determining whether to accept or reject such advice, few policy considerations favor imposing a duty on the advising physician.").

¶ 21 In *Oliver v. Brock*, 342 So.2d 1 (Ala. 1977), the Alabama Supreme Court addressed the question of the existence of a physician-patient relationship which would support a medial malpractice action. *Id.* at 3. The facts were (1) the defendant doctor had never seen the plaintiff, (2) neither the plaintiff's parents nor her treating doctor had ever requested or engaged the defendant to serve as a consultant in the plaintiff's treatment, (3) the treating doctor called the defendant about another patient; during the conversation, described the plaintiffs injuries and the type of treatment being administered; did not ask for advice about the treatment; and was told by the defendant that he was treating the injuries correctly, (4) the conversation was gratuitous, and (5) the attending doctor did not employ the defendant to treat the plaintiff. *Id.* The court found that there was no evidence from which it could conclude that the defendant had consented to treat the plaintiff. *Id.* at 4–5.

¶ 22 The evidence in *Flynn v. Bausch*, 238 Neb. 61, 469 N.W.2d 125 (1991), is more compelling of the existence of a physician-patient relationship than the evidence before this Court here. Nonetheless, the Nebraska Supreme Court found that the record did not support a physician-patient relationship between the defendant doctor and the plaintiff. *Id.* at 129. In *Flynn*, the defendant doctor and the plaintiff's treating doctor had a conversation about the plaintiff in the hospital nursery where the plaintiff was at the time. *Id.* at 127. The two doctors agreed that additional tests on the plaintiff were needed. *Id.* The defendant did not look at the plaintiff's chart or any test results and was not aware of the plaintiff's name. *Id.* Although the defendant did look at the plaintiff in the

nursery, he did not examine the plaintiff but noticed that he appeared jaundiced and had a rash. *Id.* T he defendant advised the treating doctor to wait on test results before performing a blood-exchange transfusion. *Id.* The plaintiff alleged that he suffered brain damage and other injuries which could have been avoided had he received the transfusion earlier. *Id.* at 128. The court concluded that summary judgment in the defendant's favor was proper notwithstanding he had looked at the plaintiff in the nursery and had advised the transfusion be delayed, which it was. The court reasoned that the inferences were too general to support a finding that the defendant had undertaken to participate in the plaintiff's care. *Id.* at 129.

¶ 23 In *St. John v. Pope*, 901 S.W.2d 420 (Tex.1995), the Texas Supreme Court faced the question of whether a physician-patient relationship existed under the facts in that case. *Id.* at 421. The defendant doctor was on call at the hospital when the plaintiff was being treated in the emergency room. *Id.* at 421–422. When the emergency room doctor consulted the defendant by telephone, the defendant opined that the patient should be transferred to another facility. *Id.* at 422.

¶ 24 The plaintiff in *St. John* sued the defendant for medical malpractice. *See id.* The court surveyed the history of medical malpractice and concluded that a physician-patient relationship was necessary to maintain a medical malpractice action. *Id.* at 423. It did not dispute that a physician's agreement with a hospital might require an on-call physician to treat the hospital's patients, but the fact that a physician is on call does not in itself impose such a duty. *Id.* at 424. The court found that the defendant had established the lack of a physician-patient relationship in his motion for summary judgment as a matter of law. *Id.* The court further noted that after the defendant had submitted evidence that he never agreed to treat the plaintiff "it was incumbent on [the plaintiff] to present [evidence of an agreement] in order to preclude summary judgment for the doctor." *Id.*

¶ 25 Here, Dr. Schlinke did not render medical advice to the plaintiffs; did not provide services to the treating physician on behalf of Shelby or Crawford; took no affirmative action to treat Shelby or Crawford; spoke only with Dr. Badgett and not to the Crawford or Jennings; did not examine Shelby or Crawford; did not receive a referral of Shelby or Crawford for treatment or consultation; was not employed by Dr. Badgett and had not been asked or contracted by Dr. Badgett to provide medical treatment to Shelby or Crawford; and had not reviewed any work, conducted any laboratory tests, reviewed any test results, prepared any reports, or billed the plaintiffs. Further, none of the plaintiffs agreed that Dr. Schlinke could treat Crawford or Shelby. Even though Dr. Badgett chose to rely on Dr. Schlinke's opinion, Dr. Badgett was free to exercise his independent judgment.

¶ 26 Dr. Schlinke submitted evidentiary materials supporting a finding that he did not have a physician-patient relationship with the plaintiffs. It was then incumbent on the plaintiffs to come forth with evidentiary materials to support the formation of the essential physician-patient relationship. The plaintiffs relied on the fact that Dr. Badgett would not have allowed Crawford to deliver early but for Dr. Schlinke's recommendation. This is insufficient to create a physician-patient relationship. The facts before us fail to show that Dr. Schlinke agreed to treat the plaintiffs or undertook treatment of any of the plaintiffs. Thus, there was not the physician-patient relationship necessary for a medical malpractice action. The district court correctly granted judgment in Dr. Schlinke's favor.

## VII. CONCLUSION

¶ 27 A medical malpractice action is one of negligence wherein the duty is born from a contractual relationship. In a medical malpractice action, the plaintiff must prove a physician-patient relationship in order to establish a duty owed by the defendant. A telephone conversation between a non-treating physician and the treating physician concerning the patient, even when the treating physician relies on the non-treating physician's opinion, without more, is insufficient to establish a physician-patient relationship. Based on the record before us, we conclude

that Dr. Schlinke did not agree to or undertake to treat Crawford or Shelby and did not form a physician-patient relationship with the plaintiffs as a matter of law.

¶ 28 We find that the district court correctly rendered summary judgment in favor of Dr. Schlinke. The Court of Civil Appeals' opinion is vacated, the trial court's order awarding summary judgment in favor of Dr. Schlinke is affirmed, and the cause is remanded for further proceeding.

**COURT OF CIVIL APPEALS' OPINION VACATED; CERTIFIED INTERLOCUTORY ORDER AFFIRMED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

EDMONDSON, C.J., TAYLOR, V.C.J., and HARGRAVE, OPALA, and WINCHESTER, and REIF, JJ., concur.

WATT and COLBERT, JJ., dissent.

KAUGER, J., not participating.